IRVING PARENTS' AND LANDOWNERS' ASSOCIATION v STATE BOARD OF EDUCATION

1. SCHOOLS AND SCHOOL DISTRICTS—ADMINISTRATIVE PROCEDURES ACT —APPEAL AND ERROR—COURTS—JURISDICTION.

The Administrative Procedures Act of 1969 vests jurisdiction in the circuit court to review a final decision or order of the State Board of Education as to questions of law in a contested case regarding the transfer of property from one school district to another (MCLA 24.301 *et seq.).*

2. SCHOOLS AND SCHOOL DISTRICTS—ADMINISTRATIVE PROCEDURES ACT —BOUNDARIES—APPEAL AND ERROR.

Circuit court review of a final decision or order of the State Board of Education in a contested case regarding the transfer of property from one school district to another is limited by the Administrative Procedures Act to questions of law; no *de novo* review is permitted by the act (MCLA 24.301 *et seq.).*

Appeal from Oakland, William R. Beasley, J. Submitted Division 2 December 6, 1972, at Lansing. (Docket No. 13157.) Decided March 16, 1973. Leave to appeal denied, 390 Mich 754.

Complaint by Irving Parents' and Landowners' Association against the State Board of Education for judicial review of an order of the State Board of Education denying plaintiff's request for transfer of property from the Pontiac School District to the Bloomfield Hills School District. Defendant's motion for accelerated judgment denied. Defendant appeals by leave granted. Affirmed.

*Condit & McGarry, P. C.,* for plaintiffs.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 47 Am Jur, Schools § 12 *et seq.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eugene Krasicky* and *Gerald F. Young,* Assistants Attorney General, for defendant.

Before: BRONSON, P. J., and R. B. BURNS and DANHOF, JJ.

BRONSON, P. J. The present case involves a significant challenge to the scope of the Administrative Procedures Act of 1969. MCLA 24.201 *et seq.;* MSA 3.560 (101) *et seq.* The State Board of Education (hereinafter defendant) appeals from the trial court's finding that the circuit court possessed jurisdiction to review defendant's denial of a proposed property transfer from one school district to another.

The facts are not disputed. Irving Parents' and Landowners' Association (hereinafter plaintiff) filed a request with the Oakland Intermediate Board of Education seeking a transfer of their property from the Pontiac City School District to the Bloomfield Hills School District. This intermediate board denied the request and the State Board of Education affirmed the denial by an order entered June 30, 1971.

On August 3, 1971, plaintiff filed a complaint in the Oakland County Circuit Court alleging that the order issued by defendant was (1) not supported by competent, material, and substantial evidence, (2) arbitrary, capricious, and an abuse of discretion, (3) in violation of plaintiff's constitutional rights, and (4) made upon irregular and unlawful procedure. Plaintiff predicated the circuit court's jurisdiction upon the Administrative Procedures Act of 1969 (hereinafter APA). Defendant responded by filing a motion for accelerated judgment alleging that the circuit court lacked subject

matter jurisdiction. Following the submission of briefs and reception of oral arguments, the trial court dismissed defendant's motion. This Court granted leave to consider the following issue:

*Does the Administrative Procedures Act of 1969 vest subject matter jurisdiction in the circuit courts to review the final decision of the State Board of Education entered pursuant to § 467 of 1955 PA 269 reviewing the requested transfer of property from one school district to another?*

This precise issue was presented to the Court in *Imlay Township Primary School District No 5 v State Board of Education,* 359 Mich 478 (1960). The *Imlay* Court found that the language of § 467 of 1955 PA 269[1] provided the State Board of Education with appellate review of property transfers between school districts which "shall be final". This provision for finality was found by the *Imlay* Court to complement the principle that the control of education was vested in the state rather than local authorities. Since the School Code, enacted in 1955, was considered special legislation and the original Administrative Procedures Act, enacted in 1952, was considered general legislation, this Court held that the subsequent specific legislation must control a preceding general statute. Thus, the finality provision of the School Code precluded the application of this Administrative Procedures Act which granted circuit courts jurisdiction to review the decisions of administrative agencies.

This statutory construction preserved the *Imlay* Court's conclusion that the finality provision was intended by the Legislature to preclude any review of the factual issues involved. The only judicial review recognized by the *Imlay* Court was by writ

[1] MCLA 340.467; MSA 15.3467.

of certiorari to the Supreme Court. This type of a limited review was subsequently employed in *School Dist of Lansing v State Board of Education,* 367 Mich 591 (1962). Defendant urges that this precedent requires a reversal. Believing that the intended effect of the Administrative Procedures Act has been fundamentally changed by its recent reenactment in 1969, we cannot agree.

The Administrative Procedures Act originally provided for judicial review as follows:

"Any person aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, is entitled to judicial review thereof under this act; but *nothing in this section shall be deemed to prevent resort to other means of review, redress, relief or trial de novo, provided by law.* In any proceeding in which *alternative* methods of appeal are available, any person desiring to take a cross appeal shall take said cross appeal proceeding in the same manner in which the original appeal has been taken." MCLA 24.108; MSA 3.560(21.8). (Emphasis added.)

This provision of the act further provided the circuit courts with the jurisdiction to review the decisions of administrative agencies. In view of the quoted language, it is apparent that such circuit court review constituted a *permissible* alternative method of appeal not precluding "resort to other means of review, redress, relief or trial de novo provided by law". In this context, the *Imlay* Court was presented with no compelling reason to apply the Administrative Procedures Act. The *Imlay* decision, recognizing an alternative method of review by certiorari to the Supreme Court, clearly constituted another method "provided by law" within the meaning of the act.

The distinctions between this prior law and the subsequently enacted APA (effective July 1, 1970)

is found in the mandatory character of its provisions. Section 102 of the APA defines the scope of review as follows:

"Judicial review of a final decision or order in a contested case *shall* be by any applicable *special statutory review proceeding* in any court *specified by statute* and in accordance with the general court rules. In the *absence* or *inadequacy* thereof, judicial review *shall* be by a petition for review in accordance with sections 103 to 105." MCLA 24.302; MSA 3.560(202). (Emphasis added.)

Although this language, like its predecessor, recognizes the propriety of various review procedures, it restricts the type of procedures permitted and in their absence or inadequacy establishes review pursuant to the act as a mandatory alternative.[2] Section 102 first directs review in accordance with any "applicable special *statutory review proceeding* in any court *specified by statute*". In the absence or inadequacy of such review § 102 mandatorily directs review in circuit court pursuant to §§ 103 to 105.

The mandatory nature of the act resulting in its broad application is likewise insured by its remaining provisions. Section 3 defines an agency in broad terms with a limited number of exceptions. The enumerated exceptions include the governor, agencies in the legislative or judicial branches of

[2] The substantive change created by the APA has been characterized as follows:·

"[Sections 102–106] change the practice as it existed under the former Administrative Procedures Act. The review provided in that statute was an alternative to any other methods of review available to the person aggrieved by agency action. *The new act allows no such option.* It perpetuates the numerous and varied procedures which are to be found in the *specific law governing the agencies,* if they provide *adequate* review." Cramton and Holmes, The New Michigan Administrative Procedures Course Handbook (ICLE 1970), ¶ 621, Exclusivity of Statutory Method, p 153.

government, an agency controlling higher education and the State Civil Service Commission. Section 113 describes the intended effect of the APA by providing that "[it] applies to *all* agencies and agency proceedings *not expressly exempted*". (Emphasis added.) The single expressed exemption in the act is the Bureau of Workmen's Compensation and its Appeal Board.[3]

Defendant is not expressly exempted from the application of the act and its subjectivity to it is not seriously doubted. Defendant claims to be exempt from circuit court review upon the basis that an adequate method of judicial review is provided by the *Imlay* decision. Since the APA is given a broad application by its provisions, the scope of other methods of review recognized by § 102 must be viewed restrictively. The descriptive language of "any applicable special *statutory review proceeding* in any court *specified by statute*" clearly places the emphasis upon the statutory nature of the review. Section 467 of the School Code of 1955 simply provides that the decision of the State Board of Education "shall be final". This statutory language establishes no method of judicial review. Such statutorily imposed finality merely provides the vehicle for the *Imlay* Court's recognition of a method of review by judicial interpretation.[4] We seriously doubt whether this was the type of statutory review intended by section 102.[5]

---

[3] MCLA 24.315; MSA 3.560(215).

[4] *Contrast,* § 38 of the Michigan Employment Security Act, MCLA 421.38; MSA 17.540, which specifically provides for review of agency decisions in circuit court. *See Harlan Electric Co v MESC,* 41 Mich App 167 (1972). *See,* also, 4 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), pp 43–49 (listing special statutes making particular administrative actions subject to judicial review).

[5] The weight accorded the "finality" of § 467 of the School Code of 1955 should be minimal. This provision for finality is qualitatively no

Defendant argues that the Legislature's silence since the *Imlay* decision constitutes acquiescence or ratification of its interpretation. An attempt to determine legislative intent from silence requires conjecture and speculation from which a logical explanation supporting either side of a proposed issue can be found. The competing argument in the instant case may be that the Legislature believed that it was not necessary to specify the state school board's inclusion within the APA since § 115 provided for inclusion of all agencies not specifically exempted. We find greater predictability regarding legislative intent flowing from what the Legislature has affirmatively done.

The same approach adopted in *Imlay* was subsequently adopted with regard to the State Tax Commission in *Dossin's Food Products, Inc v State Tax Commission,* 360 Mich 312 (1960). To preserve the effect of the *Dossin's* decision, the Legislature amended § 152 of the General Property Tax Law[6] on August 11, 1969, to specifically provide that the predecessor of the APA not be applicable to the tax commission. Since § 112 of the APA provided that references to the old act were deemed references to the new act, this amendment to the General Property Tax Law needed no further modification when the APA was enacted. Significantly, the Legislature has not chosen to similarly modify § 467 of the School Code of 1955 either prior or subsequent to the enactment of the APA.

Defendant further argues, like the *Imlay* Court,

different than any other decision by an administrative agency which is likewise considered final. In view of the preservation of the agencies' findings of fact by the APA and the act's mandatory nature, the meaning of the language of § 467 should be limited to "administrative finality". *Dossin's Food Products, Inc v State Tax Commission,* 360 Mich 312, 319 (1960) (dissenting opinion by Justice SOURIS).

[6] MCLA 211.152; MSA 7.210. *See Republic Development Corp v State Tax Commission,* 38 Mich App 166 (1972).

that review of its decisions by circuit courts should be prohibited since the control of education is vested in the state and the creation and alteration of school district boundaries is a state function. We are concerned that the concept of state control is becoming an unresponsive monolith which ignores the vital incidence of local control and the true character of the educational system throughout this state. Local control historically has permeated our educational system. The citizenry is well aware of the role they play by electing school board officials to control the administration of the schools and establish the policies pursued and providing independent financing for the maintenance of schools. Above all else, they demand that their traditional and historical right to continue this role be guaranteed. Notwithstanding the fact that the statutory scheme[7] regulating education was created by the state Legislature, the plenary powers disclosed therein are indicative of the functions allocated to the local communities. By way of example, some of the powers reserved to a first-class school district include the following: (1) the power to take, hold, convey, and sell real and personal property; purchase, lease, and take by eminent domain real property; evict, maintain, and lease buildings; and do all things necessary to establish, maintain, and manage public schools,[8] (2) the power to borrow, not in excess of $50,000,[9] and (3) the power over teachers and all other employees, including specification of duties and

---

[7] This scheme divides school systems into primary, fourth-class, third-class, second-class, and first-class school districts. *See, e.g.,* MCLA 340.21 *et seq.;* MSA 15.3021 *et seq.;* MCLA 340.51 *et seq.;* MSA 15.3051 *et seq.;* MCLA 340.101 *et seq.;* MSA 15.3101 *et seq.;* MCLA 340.141 *et seq.;* MSA 15.3141 *et seq.;* MCLA 340.181 *et seq.;* MSA 15.3181 *et seq.*

[8] MCLA 340.192; MSA 15.3192.

[9] MCLA 340.197; MSA 15.3197.

qualifications, not in conflict with state require-
ments.[10]

A comparison between the creation and supervi-
sion of school districts and imposition of minimal
requirements by the state, and the primary control
of the actual operation of schools by local authori-
ties evidences the strong local foundation upon
which our school system is based. Recently, in
*Governor v State Treasurer,* 389 Mich 1 (1972), *reh
granted* January 30, 1973, Justice BRENNAN, in a
dissenting opinion, described the school system in
this state. We cannot agree more with Justice
BRENNAN's statement that:

"The Legislature does maintain and support a *system*
of schools. That *system* is a *system* of local schools,
operated by local school districts." p 40.

After describing the historical background and
modern development of this state's educational
system, Justice BRENNAN stated that:

"Public schools are established by the people in their
local communities. They exist primarily to fulfill the
*parental* responsibility of educating children." p 58.

During the current battle raging over the field of
education, neither the Legislature nor the judi-
ciary can or should ignore the vital function pro-
vided by local communities controlling the opera-
tion of our schools. Mere reference to the phrase
"state control" is not only inadequate but mislead-
ing. Defendant should be sensitive to these local
concerns rather than seeking insulation from
them. Defendant's policy reason for denying cir-
cuit court review is unpersuasive.

Defendant finally contends that circuit court
review pursuant to the APA will disrupt the sta-

---

[10] MCLA 340.204; MSA 15.3204.

bility and certainty of school district boundaries. The contention is based upon the unfounded concern that the circuit court will review defendant's factual findings and redetermine these facts. Section 106 of the APA establishes the scope of review and limits it to questions of law. No *de novo* review is permitted.[11] Thus, the APA provides the equivalent review defendant seeks by an application of the *Imlay* decision. We have no reason to believe that the circuit courts will act unconstitutionally by exceeding their statutory grant of power. An application of the *Imlay* decision enunciating a method of review based upon a statutory provision for "finality" would require a distortion of the language of § 102 limiting other permissible methods of review to "special statutory review proceeding[s] * * * specified by statute". The mandatory nature of the statutory scheme of the APA justifies its application to defendant. Finding no discernible distinction between the finality of defendant's decision and other agencies' decisions, we conclude that the trial court properly interpreted the challenged statute.

Affirmed. No costs, a public question being involved.

R. B. BURNS, J., concurred.

DANHOF, J., concurred in result only.

---

[11] *See Fisher-New Center Co v State Tax Commission,* 380 Mich 340, 377 (1968) (dissenting opinion by Justice SOURIS).