SCHOOL DISTRICT OF THE CITY OF LANSING *v.*
STATE BOARD OF EDUCATION.

1. MUNICIPAL CORPORATIONS—EDUCATION—LEGISLATURE.
Education is not inherently a part of the local self-government
of a municipality except insofar as the legislature may choose
to make it such, as control of our public school system is a
State matter delegated and lodged in the State legislature by
the Constitution.

2. SCHOOLS AND SCHOOL DISTRICTS—STATE CONTROL.
The policy of the State is to retain control of its school system,
to be administered throughout the State under State laws
by local State agencies organized with plenary powers to
carry out the delegated functions given it by the legislature.

3. SAME—DELEGATION OF POWER—ALTERATION OF BOUNDARIES.
The legislative power to alter school district boundaries may
be delegated to subordinate authorities (CLS 1956, §§ 340.461–
340.465, as amended by PA 1957, No 135).

4. SAME—ALTERATION OF BOUNDARIES.
The legislature provided sufficient standards in the statutory
provisions for the detachment of territory from one school
district and attachment thereof to another in requiring that
the territory be contiguous to the district to which it was to
be attached, in requiring that designated parties may request
such action, that approval of the electors at an annual or
special election be given, prescribing the notice to be given
of the meeting of the county board of education at which

REFERENCES FOR POINTS IN HEADNOTES
[1]  37 Am Jur, Municipal Corporations § 107.
[2]  47 Am Jur, Schools §§ 6–8.
[3–5]  47 Am Jur, Schools §§ 18, 19.
[3]  Discretion of administrative officers as to changing boundaries
of school district.  65 ALR 1523, 135 ALR 1096.
[6–8]  47 Am Jur, Schools § 23.
[9]  14 Am Jur, Costs § 91.

the matter was to be considered, filing of map showing in detail the new boundaries, and for an equitable payment for the taking of property, and for an accounting (CLS 1956, §§ 340.461–340.465, as amended by PA 1957, No 135).

5. SAME—ALTERATION OF BOUNDARIES—TRANSFER OF PROPERTY—EQUITABLE PAYMENT.

The determination of equitable payment by a county board of education or joint boards in requiring district to which territory is attached to pay for real or personal property transferred to it would require the exercise of its discretion gained through its business experience, time in the community, and knowledge of property values, and an abuse of such discretion would be subject to judicial review (CLS 1956, § 340.465).

6. SAME—APPROVAL OF ANNEXATION—EQUAL PROTECTION OF LAW.

It was not a denial of equal protection of the laws for the legislature to accord the right of approval of the school tax electors in school district from which detachment of area is sought before annexation may become effective and not accord the school tax electors of the district to which it is to be attached the same right, since the electors in neither district have an absolute right to vote on the annexation question (US Const, Am 14; Mich Const 1908, art 2, § 1; CLS 1956, § 340.461, as amended by PA 1957, No 135).

7. SAME—ANNEXATION—APPROVAL—PARTIES.

A school district is not a proper party to raise the question of whether or not its residents have the right to vote on the transfer of territory in an annexation proceeding, since it is an agency of the State government and not in a position to attack its parent, such right, if existing at all, existing in the voters and not in the school district (CLS 1956, § 340.461, as amended by PA 1957, No 135).

8. SAME—ANNEXATION—REVIEW BY STATE BOARD OF EDUCATION.

Contention that State board of education had not actually considered the appeal to it from action taken by joint county boards of education in attaching property to plaintiff district and requiring it to make a payment for certain property therein *held*, without merit under record presented.

9. COSTS—PUBLIC QUESTION—SCHOOL DISTRICTS—ANNEXATION.

No costs are allowed in proceeding to review annexation of territory by joint county boards of education to plaintiff district, public questions being involved (CLS 1956, §§ 340.461–340.465, as amended by PA 1957, No 135).

Appeal from State Board of Education. Submitted April 4, 1962. (Docket No. 45, Calendar No. 49,460.) Decided September 10, 1962.

Certiorari by the School District of the City of Lansing against the State Board of Education to review approval of action taken by joint county boards of education transferring a portion of Community school district to Lansing school district. Affirmed.

*Joseph W. Planck,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Eugene Krasicky,* Solicitor General, *Gerald J. O'Reilly,* Assistant Attorney General, for defendant.

*Amici Curiae:*

*Leo A. Farhat,* Prosecuting Attorney, and *John Robert Dethmers,* Civil Assistant, for Alton J. Stroud, Ingham County Superintendent of Schools.

*Cummins, Butler & Hovey (James R. B. Hovey,* of counsel), for Community School, Ingham and Clinton Counties.

Kavanagh, J.    The school district of the city of Lansing appeals on leave granted from the approval by the State board of education of a transfer of property from a community school district located partially in DeWitt township, Clinton county, and partially in Lansing township, Ingham county. The area involved is located just north and east of the city of Lansing.

The community school district of that area petitioned the joint county boards of education under

the school code of 1955[1] for a transfer to the school district of the city of Lansing of that portion of Community school district located west of Coolidge road as it runs north and south through its school district.

The joint county boards of education of Ingham, Eaton, and Clinton counties heard the petition and on May 2, 1961, granted the transfer, requiring and exacting a payment from the school district of the city of Lansing of the sum of $29,471 as payment for properties it would receive by the transfer.

The school tax electors of the community district approved the transfer, as required by the school code.

Appeal was taken to the State board of education by the school district of the city of Lansing. A hearing was held and at the conclusion of the taking of testimony and arguments the State board of education approved the transfer, made specific findings of fact, and approved the payment of the sum of money for the property.

Plaintiff school district raises the following questions:

1. Are the sections of the school code dealing with transfer of property between districts unconstitutional in that they provide no standards which the county board or the joint boards and the State board of education shall follow in the transfer of school property to another school district?

2. Are the same sections of the school code unconstitutional for failing to provide a standard to determine an equitable payment by the school district where a transfer of property is made?

3. Is section 461 of the school code unconstitutional as denying to plaintiff the equal protection of the laws, in that it grants a vote on the question

[1] CLS 1956, § 340.1 *et seq.*, as amended (Stat Ann 1959 Rev § 15.3001 *et seq.*).—Reporter.

of transfer of territory to the district from which detachment is made, while denying a vote to the district to which the territory is transferred?

4. Did the State board of education actually consider the appeal?

Unlike the delegation of other powers by the legislature to local governments, education is not inherently a part of the local self-government of a municipality except insofar as the legislature may choose to make it such. Control of our public school system is a State matter delegated and lodged in the State legislature by the Constitution. The policy of the State has been to retain control of its school system, to be administered throughout the State under State laws by local State agencies organized with plenary powers to carry out the delegated functions given it by the legislature.

We are concerned here with sections 461 through 465 of the school code of 1955[2] dealing with transfer

[2] "Sec. 461. The county board of education may, in its discretion, detach territory from 1 district and attach it to another when requested to do so by resolution of the board of any district whose boundaries would be changed by such action, or when petitioned by not less than 2/3 of the resident owners of the land to be transferred. The county board of education shall take final action in regard to the resolution or petition within a period of 60 days of the receipt of the resolution or petition. Only territory contiguous to a district may be transferred. Whenever the latest available taxable valuation of the area to be detached is more than 10% of the latest available taxable valuation of the entire school district from which it is to be detached, the action of the county board of education directing such detachment shall not be valid unless approved, at an annual or special election called for that purpose in the district from which the detachment is to be made, by an affirmative vote of a majority of the school tax electors of the district, voting thereon." CLS 1956, § 340.461, as amended by PA 1957, No 135 (Stat Ann 1959 Rev § 15.3461).

"Sec. 462. The county superintendent of schools shall give at least 10 days' notice of the time and place of the meeting of the county board of education and of the proposed alteration in school district boundaries to be considered at said meeting, by posting such notice in at least 5 public places in each of the districts whose territory may be affected by such alteration and by publication at least once prior to such meeting in a newspaper of general circulation in the territory of the affected districts." CLS 1956, § 340.462 (Stat Ann 1959 Rev § 15.3462).

of territory between school districts.

Plaintiff school district does not challenge the authority of the legislature, subject always to constitutional restrictions, to organize and control school districts in the State, including its power to provide for the alteration of boundaries of school districts. It agrees that the legislative power to alter school district boundaries may be delegated to subordinate authorities. Plaintiff merely says that no standard or yardstick has been provided for the guidance of the subordinate authority. Plaintiff school district then proceeds to review

"Sec. 463. Whenever the territory of districts the boundaries of which would be affected by the proposed alteration extends into 2 or more counties, or whose boundaries as a result of the proposed alteration would extend into 2 or more counties, the county boards of education of all such counties shall meet jointly and sit as a single board to consider and act upon the request for the transfer of territory. The resolution or petition for the transfer of territory, as set forth in section 461 of this act, may be addressed to and filed with the county board of any one of such counties and it shall then be the duty of the county superintendent of schools of such county to call the joint meeting of the affected county boards and to give the notice of such meeting as set forth in section 462 of this act. At such joint meeting of the county boards of education, they shall elect 1 of their members chairman and another secretary thereof." CLS 1956, § 340.463, as amended by PA 1957, No 135 (Stat Ann 1959 Rev § 15.3463).

"Sec. 464. When the county board of education or the joint county boards of education have approved alterations in the boundaries of school districts, such board or joint boards shall cause a map to be prepared showing in detail the boundaries of the affected districts before the alteration in boundaries and the boundaries of territory annexed or detached. A copy of such map bearing the certification of the county superintendent of schools or the secretary of the joint boards shall be filed with the secretary of each affected district and with each affected township supervisor or city assessor." CLS 1956, § 340.464 (Stat Ann 1959 Rev § 15.3464).

"Sec. 465. In the resolution ordering the transfer of property, the county board or joint boards shall determine the effective date of such transfer, which shall not be less than 10 days from the date of the resolution, and shall determine whether any personal property of a school district is to be transferred and, when any real property owned by a school district is transferred to another district, determine an equitable payment for the taking of such property. The board or joint boards may require an accounting from the affected districts and, for the purpose of making its determination, may adjourn from time to time or subject to the call of the president of the board or chairman of the joint boards." CLS 1956, § 340.465 (Stat Ann 1959 Rev § 15.3465).

cases from other States construing their respective statutes. We find no merit in the contentions of plaintiff school district.

The legislature provided the county board of education may, in its discretion, when requested to do so by resolution of the board of any district whose boundaries would be changed by such action, or when petitioned by not less than 2/3 of the resident owners of land to be transferred, detach territory from one district and attach it to another.

The legislature further provided that only territory contiguous to a district may be transferred.

The legislature provided that when the latest available taxable valuation of an area to be detached is more than 10% of the latest available taxable valuation of the entire school district from which it is to be detached, the action shall not be valid until approved at an annual or special election for that purpose in the district from which the detachment is to be made.

The legislature also provided that the county superintendent of schools shall give at least 10 days' notice of the time and place of the meeting of the county board of education and of the proposed alteration of school district boundaries to be considered at said meeting.

The legislature further provided that whenever the territory of districts the boundaries of which would be affected by the proposed alteration extends into 2 or more counties, or whose boundaries as a result of the proposed alteration would extend into 2 or more counties, the county boards of education of all of such counties shall meet jointly and sit as a single board to consider and act upon the request for transfer. The legislature provided how such a petition under those circumstances may be presented.

The legislature provided · that when the county board or joint county boards have approved alterations in the boundaries, such board or boards shall cause a map , to be prepared showing in detail the new boundaries, of the affected districts and cause a copy of such map to be filed with the secretary of each affected district and with each affected township supervisor or city assessor.

The legislature also provided that in the resolution ordering the transfer of property, the county board or joint boards shall determine the effective date of such transfer, which shall not be less than 10 days from the date of the resolution. It provided the county board or joint boards shall determine whether any personal property is to be transferred and, when ' any real property owned by a school district is transferred to another district, determine an equitable payment for the taking of such property. It provided that the board or joint boards may require an accounting from the affected districts and, for the purpose of making its determination, may adjourn from time to time subject to the call of the president of the board or chairman of the joint boards.

The legislature certainly expected the board or joint boards, in determining "equitable payment" for property taken, would exercise its discretion gained through its business experience, time in the community, and knowledge of property values, all gained as a result of experience in educational matters. Any abuse of the board's discretion would be subject to judicial review.

It should be apparent that while the legislature may not have taken care of every conceivable possibility in : delegating this administrative function to its agent, it has set up sufficient standards for the guidance of the administrative body so as to meet all constitutional tests.

The third question raised by plaintiff school district is whether section 461 of the school code of 1955 is unconstitutional as denying to plaintiff the equal protection of the laws in that it grants a vote on the question of transfer of territory to the district from which detachment is made, while denying a vote to the district to which the territory is transferred.

Plaintiff does not question that the authority to alter boundaries may be delegated without the consent of the inhabitants of the territory annexed or the municipality to which it is annexed, or even against its express protest. Its claim is that to deny one district a vote with reference to the transfer and permit a vote in the other district is to deny the equal protection of the laws contrary to the provisions of both the State and Federal Constitutions.[3] These objections have been disposed of against plaintiff's contention by the following decisions, which we content ourselves with citing: *Hunter* v. *City of Pittsburgh,* 207 US 161 (28 S Ct 40, 52 L ed 151); *Attorney General, ex rel. Battishill,* v. *Springwells Township Board,* 143 Mich 523.

In order to deny the equal protection of the laws contrary to the provisions of the State and Federal Constitutions, it would be necessary for the electors in plaintiff school district to have an absolute right to vote on the annexation question. The above mentioned decisions clearly indicate they do not have such a right. The legislature is the only body that could give plaintiff school district such a right. This it has omitted. Not being entitled to the right, the fact that it is given to one district and not to the other does not deny the equal protection of the

[3] US Const, Am 14, § 1; Const (1908), art 2, § 1.—Reporter.

laws contrary to the provisions of the State and Federal Constitutions.

We do not believe plaintiff is a proper party to raise the question of whether or not its residents have the right to vote on the transfer. This right, if existing at all, would exist in the voters and not in the school district. Plaintiff school district is an agency of the State government and is not in a position to attempt to attack its parent. The question of how and where individuals would vote is a question between the individuals themselves and the government.

The remaining question is whether the State board of education actually considered the appeal. Examination of the record of this case discloses a substantial amount of testimony on the part of members of the Lansing school board and arguments of its attorney as well as the attorney for defendant. The record contains the amended order dated July 19, 1961, reciting that the State board of education had heard sworn testimony of witnesses and oral arguments, and being fully advised in the premises made certain findings of fact. This indicates the State board gave serious consideration before disposing of the questions involved. We find no merit in plaintiff school district's contention in this regard.

The action of the State board of education is affirmed. Public questions being involved, no costs are allowed.

CARR, C. J., and KELLY, BLACK, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.

DETHMERS and ADAMS, JJ., did not sit.