OWENDALE-GAGETOWN SCHOOL DISTRICT v STATE BOARD
OF EDUCATION

Docket No. 64193. Argued November 17, 1980 (Calendar No. 9).—
Decided March 31, 1982. Rehearing denied *post*, 1108.

In May, 1975, the State Board of Education approved the request
of certain citizens of the Owendale-Gagetown School District to
transfer property, constituting 8.4% of the latest available
taxable valuation, to the Elkton-Pigeon-Bay Port School Dis-
trict. In May, 1976, the board approved the request of other
Owendale citizens to transfer property within the Owendale
district, comprising 9.2% of the latest available taxable valua-
tion, to the Cass City School District. The Owendale district
brought an action against the State Board of Education chal-
lenging the approval of the transfer to Cass City on the ground
that the combined total of the latest available taxable valua-
tion of the Elkton and Cass City transfers was 17.6% and thus
exceeded the limit provided in the School Code of 1955 on
property transfers without approval by the electors of the
district. The Ingham Circuit Court, James T. Kallman, J.,
reversed the board's order, determining that the valuation limit
provided in the code was cumulative, that the total valuation of
the properties exceeded that limit, and that approval by the
voters was required before the transfer to the Cass City district.
The Court of Appeals, D. F. Walsh, P.J., and Quinn and Stair,
JJ., reversed and remanded in an unpublished per curiam
opinion (Docket No. 29768). Subsequently, certain individual
electors of the Owendale district were added as parties plaintiff,
and certain owners of the property which was the subject of the
Cass City transfer intervened as parties defendant. The circuit
court then again reversed the board's order and reaffirmed its
prior decision. The Court of Appeals, J. H. Gillis, P.J., and R. B.
Burns and N. J. Kaufman, JJ., reversed the order of the trial
court (Docket No. 43960). The plaintiffs appeal.

In an opinion by Chief Justice Coleman, joined by Justices
Williams, Fitzgerald, and Ryan, the Supreme Court *held*:

1. The provision of the School Code of 1955 which required

REFERENCES FOR POINTS IN HEADNOTES
[1, 4, 5] 68 Am Jur 2d, Schools §§ 26, 27.
[2, 6] 73 Am Jur 2d, Statutes §§ 204-208, 265, 306.
[3] 5 Am Jur 2d, Appeal and Error § 693.

approval by the voters of a transfer of school district territory valued in excess of ten percent of the latest available taxable valuation of the entire district must be construed as only requiring approval of single transfers in which the area to be detached exceeded the ten percent limit. The statute cannot easily be read to require approval of transfers which, cumulatively with previous transfers, exceeded the limit. Nor does a literal reading produce an absurd or unjust result, clearly inconsistent with the purposes and policies of the School Code, sufficient to justify a departure from such a reading. The decision of the Court of Appeals accords with the plain meaning of the statute.

2. The plaintiffs' assertion that the board's approval of the transfer was arbitrary and capricious so as to constitute an abuse of discretion was not briefed on initial appeal to the circuit court, and the Court of Appeals determined that the issue had been abandoned in the circuit court. The plaintiffs' argument is not responsive to the holding of the Court of Appeals, nor have the plaintiffs provided any reasons from which to conclude that the Court of Appeals erred in holding that the issue was abandoned, and the issue need not be addressed further.

Affirmed.

Justice Moody, joined by Justices Kavanagh and Levin, dissented:

The provision in the School Code which requires voter approval of a transfer of school district territory valued in excess of ten percent of the latest available taxable valuation of the entire school district must be construed as requiring voter approval of any transfer which cumulatively with prior transfers exceeds the ten percent limit. This construction gives effect to the spirit and purpose of the statute, to permit minor alterations in school district boundaries to be accomplished in a simple manner without a vote of the electors, but to protect the territorial and fiscal integrity of school districts by preventing piecemeal *seriatim* annexation or destruction of a district without a vote. Other provisions of the School Code show a legislative policy of requiring a vote whenever a school district is scheduled to disappear or whenever there is to be a significant alteration or detachment of property. A literal reading of the statute would lead to a result incompatible with the legislative intent.

92 Mich App 719; 285 NW2d 435 (1979) affirmed.

OPINION OF THE COURT

1. SCHOOLS — SCHOOL DISTRICTS — BOUNDARY ALTERATIONS.

The section of the School Code of 1955 which required a vote of the electors of a school district prior to transfer to another district of any territory valued in excess of ten percent of the latest available taxable valuation of the entire district must be read literally to have applied only to single transfers in which the area to be detached exceeded ten percent of the district valuation and not to apply to transfers which, while amounting to less than ten percent of the valuation, cumulatively with prior transfers would have exceeded that amount (MCL 340.461; MSA 15.3461, since repealed 1976 PA 451).

2. STATUTES — JUDICIAL CONSTRUCTION.

Judicial construction of a statute is unnecessary where the language is clear and unambiguous, except where a literal reading would produce an absurd and unjust result clearly inconsistent with the purposes and policies of the act.

3. APPEAL — ABANDONMENT OF ISSUES.

Failure to brief an issue on appeal to the circuit court from an administrative agency constitutes abandonment of the question, precluding review.

DISSENTING OPINION BY BLAIR MOODY, JR., J.

4. SCHOOLS — SCHOOL DISTRICTS — BOUNDARY ALTERATIONS.

*The section of the School Code of 1955 which provided that a vote of the electors of a school district was necessary prior to transfer to another district of any territory valued in excess of ten percent of the latest available taxable valuation of the entire district was designed to permit minor alterations in district boundaries while preventing major alterations without the consent of the school electors (MCL 340.461; MSA 15.3461, since repealed 1976 PA 451).*

5. SCHOOLS — SCHOOL DISTRICTS — BOUNDARY ALTERATIONS — CUMULATIVE VALUATION.

*The section of the School Code of 1955 which required a vote of the electors of a school district prior to any significant alteration of the district boundaries was intended by the Legislature to prevent piecemeal seriatim annexation or destruction of the district without voter approval; thus, where any transfer of district territory which cumulatively with prior transfer would exceed ten percent of the value of the latest available taxable valuation of the entire district, prior voter approval of the*

*transfer was required (MCL 340.461; MSA 15.3461, since re-
pealed 1976 PA 451).*

6. STATUTES — CONSTRUCTION.

> *The spirit and purpose of a statute should prevail over a literal
> reading of its provisions where the provisions are ambiguous
> and the literal reading would lead to a result which would
> circumvent the underlying purpose of the statute.*

*Law Offices of James F. Schouman* (by *James F.
Schouman* and *Mark W. Chessman)* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Gerald F.
Young,* Assistant Attorney General, for defendant
State Board of Education.

COLEMAN, C.J. Plaintiffs are appealing the hold-
ing of the Court of Appeals that when property is
detached from one school district and added to
another, the matter need not be approved by a
vote of the school tax electors of the district from
which it is removed unless the parcel involved
exceeds ten percent of the latest taxable valuation
of the transferor school district. The issue is one of
statutory construction. We conclude that the Court
of Appeals decision accords with the plain mean-
ing of § 461 of the School Code of 1955[1] and that
the legislative intent underlying the statute is not
so clearly contrary as to justify a departure from a
literal reading of the statutory language.

I

The intervening defendants in this case peti-
tioned the Huron and Tuscola Intermediate Boards

---

[1] 1955 PA 269, § 461 as amended by 1957 PA 135, § 1; MCL 340.461;
MSA 15.3461. This law was repealed by the School Code of 1976, MCL
380.1 *et seq.;* MSA 15.4001 *et seq.;* see MCL 380.951; MSA 15.4951.

of Education to transfer their property from the Owendale-Gagetown School District to the Cass City School District. Their petition was denied on May 11, 1975, and they appealed to the State Board of Education. On May 19, 1976, the state board reversed the decision of the intermediate boards and ordered that the property be transferred as requested.

The Owendale-Gagetown School District petitioned the Ingham Circuit Court to review the decision of the State Board of Education. It alleged, *inter alia,* that § 461 of the School Code of 1955 required a vote of its school tax electors and that approval of the transfer by the State Board of Education was an abuse of discretion. The school district briefed only the former issue, and in its behalf noted that a prior transfer to the Elkton-Pigeon-Bay Port School District constituted 8.4% of the valuation of the Owendale-Gagetown School District. By adding that transfer to the present transfer of 9.2% of the latest taxable valuation of the district, a total of 17.6% of the valuation of the district would be lost by these two transfers. Thus, Owendale-Gagetown argued, since the present transfer, when added to the prior transfer, would exceed the ten percent valuation mentioned in § 461, a vote by the school tax electors of its district was required. The Ingham Circuit Court agreed and reversed the State Board of Education's approval of the transfer.

The State Board of Education appealed to the Court of Appeals. The Court of Appeals reversed on August 15, 1977, holding that the Owendale-Gagetown School District lacked standing to challenge the property transfer. This Court denied the school district leave to appeal.

On October 11, 1978, the Ingham Circuit Court granted a motion by the school district to add as plaintiffs resident electors from the district. The circuit court also granted a motion to intervene by those seeking to transfer out of the Owendale-Gagetown School District. Relying on its previous interpretation of § 461 of the School Code of 1955, the Court again reversed the State Board of Education's approval of the intervening defendants' petition to transfer from the district.

The State Board of Education appealed. On October 1, 1979, the Court of Appeals reversed the decision of the circuit court. It held that § 461 required a vote of the electors only when the area involved in a single transfer exceeded ten percent of the latest taxable valuation of the school district. This Court granted leave to appeal.

II

The pertinent statute provided:

"The county board of education may, in its discretion, detach territory from 1 district and attach it to another when requested to do so by resolution of the board of any district whose boundaries would be changed by such action, or when petitioned by not less than 2/3 of the resident owners of the land to be transferred. The county board of education shall take final action in regard to the resolution or petition within a period of 60 days of the receipt of the resolution or petition. Only territory contiguous to a district may be transferred. *Whenever the latest available taxable valuation of the area to be detached is more than 10% of the latest available taxable valuation of the entire school district from which it is to be detached, the action of the county board of education directing such detachment shall not be valid unless approved, at an annual or special elec-*

*tion called for that purpose in the district from which the detachment is to be made, by an affirmative vote of a majority of the school tax electors of the district, voting thereon."* MCL 340.461; MSA 15.3461. (Emphasis added.)

Plaintiffs contend that the italicized portion of this statute must be construed so as to require a vote of the electors of the transferor district for any property transfers after ten percent of the school district's property value has been transferred.

As plaintiffs concede, a literal reading of the statute does not favor their position. The phrase "area to be detached" is to be construed. Both the phrase itself and its context clearly point to the area involved in a single transfer. By identifying the area as that which is "to be detached", the statute cannot easily be read to have applied to that which already had been detached. Further, the statute, prior to using the phrase, stated:

"The county board of education may, in its discretion, detach territory from 1 district and attach it to another when requested to do so by a resolution of the board of any district whose boundaries would be changed by such action, or when petitioned by not less than 2/3 of the resident owners of the land to be transferred." MCL 340.461; MSA 15.3461.

The territory the county board may have detached was that identified either in a resolution of the boards of affected districts or in a petition of the landowners seeking the transfer. Thus, when the statute later referred to *"the* area to be detached", the only area which it was specifying was that which would be identified in such a resolution or petition. To conclude that this language refers to the areas involved in all prior petitions or resolu-

tions that had resulted in transfers would contravene its clear and unambiguous meaning.

Ordinarily, this conclusion would render further interpretation of the statute unnecessary. Legislative intent controls statutory construction, and, in ascertaining such intent, the Legislature must be presumed to have intended the meaning expressed by the language it has chosen. When that language is clear and unambiguous, no further interpretation is necessary. *Dussia v Monroe County Employees Retirement System,* 386 Mich 244; 191 NW2d 307 (1971); *City of Grand Rapids v Crocker,* 219 Mich 178; 189 NW 221 (1922). There is, however, an exception to this fundamental rule of statutory construction that arises when a literal reading of the statutory language "would produce an absurd and unjust result and would be clearly inconsistent with the purposes and the policies of the act in question." *Salas v Clements,* 399 Mich 103, 109; 247 NW2d 889 (1976).

Plaintiffs argue that this is a case in which a literal reading would circumvent the legislative intent. Pointing to the fact that a school district could be destroyed by many transfers of less than ten percent, the plaintiffs argue that what cannot be accomplished directly in one large transfer, without approval of its electors, should not be permitted to occur indirectly through many small transfers.

We, however, cannot agree that the legislative intent is so clear as to justify a departure from the statutory language. While the present situation may not have been intended or considered by the Legislature, the interpretation which plaintiffs advocate also seems unlikely to have been within the legislative intent. Plaintiffs' interpretation would require a vote of the school tax electors for any

transfer—no matter how small or how far in the future—after the ten percent limitation had been reached by prior transfers. It does appear clear that the Legislature did not intend to require voter approval for relatively minor property transfers.

Additionally, plaintiffs' interpretation would require the courts to fill gaps left by the legislative silence regarding how the ten percent valuation should properly be computed on a cumulative basis. Specifically, the question would arise in circumstances in which property transferred out of the district later changes its value in comparison with the rest of the district. Suppose a transfer represented eight percent of the entire district's taxable valuation at the time of the transfer, but subsequently would represent only five percent of the district's valuation if it were valued as part of the district. If a later petition seeks to transfer three percent of the latest taxable valuation of the district, the question whether the prior transfer is to be treated as five percent or eight percent would be determinative of whether the three percent transfer would need to be approved by the voters. The statute's absence of any formula suggests the Legislature never envisioned that the ten percent limitation would be treated on a cumulative basis. The fact that the courts would be asked to fill such gaps as this further indicates that plaintiffs' concerns should be more properly addressed to the Legislature.

The strong competing interests at stake in this case also make it difficult to conclude that the legislative intent is so clear and that the literal meaning is so unjust and unreasonable as to justify a departure from the statutory language. On the one hand, there are the interests of a school

district in surviving as strong and viable as possible. On the other hand, there are the interests of those parents who live on the borderline with another district who would favor having their children educated in the other district. We are not now in a position either to ascertain whose interests the Legislature would or should have favored had they considered the present situation or to shape our own solution for how both of these interests might be best accommodated. We do note, however (though we do not now review, see *infra*), that approval by the County Board of Education, or, on appeal, the State Board of Education, was necessary for any proposed transfer. See MCL 340.461; MSA 15.3461, and MCL 340.467; MSA 15.3467.[2]

Therefore, we conclude that under § 461 of the School Code of 1955 a transfer had to be approved by the school tax electors only when, considered alone, it was greater than ten percent of the latest available taxable valuation of the district.

### III

In appellants' petition for review filed in the circuit court, they also alleged that the State Board of Education's approval of the transfer was arbitrary and capricious, so as to constitute an abuse of discretion. The appellants urge this Court, in the event that it does not adopt appellants' statutory construction, to reverse the Court of Appeals holding that the abuse of discretion issue was abandoned in the circuit court and to remand to the circuit court so as to allow them an opportunity to present additional evidence.

___

[2] Both of these provisions have been repealed. See the School Code of 1976, MCL 380.1 *et seq.;* MSA 15.4001 *et seq.*

On the first appeal of this case, the Court of Appeals concluded in its per curiam opinion that all issues other than the statutory construction issue were abandoned in the circuit court. The Court stated:

"None of the additional issues raised were subsequently argued in plaintiff's brief to the circuit court. Failure to brief an issue on appeal constitutes abandonment of the question. *Mitcham v Detroit,* 355 Mich 182; 94 NW2d 388 (1959), *City of St Ignace v McFarlane,* 45 Mich App 81; 206 NW2d 226 (1973)."

On the second appeal to the Court of Appeals, the Court would not consider the abuse of discretion issue since it was held to have been abandoned on the first appeal.

The appellants' short argument on this issue is both confusing and unresponsive to the Court of Appeals holding. Appellants first argue that the circuit court judge granted their motion for summary judgment based on his interpretation of MCL 340.461; MSA 15.3461, and that therefore there was no need for him to decide the abuse of discretion issue. However, we have not been able to find in the record any indication that the plaintiffs ever filed a motion for summary judgment either time the matter was in circuit court. The Court of Appeals was correct that the issue was not included in the brief plaintiffs filed when the matter was initially in the circuit court. A statement in that brief itself discloses that the reason why only the statutory construction of MCL 340.461; MSA 15.3461 was addressed was not that the brief was limited to the issues contained in a motion for summary judgment, but rather that the statutory construction issue was in the plaintiffs' view the

" 'heart' of the matter".[3]

Appellants also contend that they cannot be expected to raise an issue in their appeal to the Court of Appeals for which no evidence had yet been received in the circuit court. However, because the Court of Appeals holding was that the matter was abandoned in the circuit court and not in the Court of Appeals, whether the appellants should be expected to argue it in the Court of Appeals is irrelevant as to whether the issue had previously been abandoned in the circuit court.

Because the Court of Appeals was correct in its assertion that the only issue the appellants argued in their brief in the circuit court concerned the statutory construction of MCL 340.461; MSA 15.3461, and because appellants do not provide any reasons for concluding that the Court of Appeals erred in its conclusion that appellants thereby abandoned all other issues, we see no reason to address it further.

Therefore, we affirm.

WILLIAMS, FITZGERALD, and RYAN, JJ., concurred with COLEMAN, C.J.

BLAIR MOODY, JR., J. (dissenting). We respectfully dissent from the opinion of the Court. This case involves a citizen-initiated transfer of property between two adjacent school districts. Section 461 of the School Code of 1955,[1] replaced by § 951 of the School Code of 1976 which is substantially the same, requires approval by the voters of a

---

[3] The brief stated: "Other issues could be brought before this court for appeal but this is the succinct 'heart' of the matter".

[1] The School Code of 1955, MCL 340.1 et seq.; MSA 15.3001 et seq., was repealed and replaced by the School Code of 1976, MCL 380.1 et seq.; MSA 15.4001 et seq. The ten percent requirement is contained in MCL 340.461; MSA 15.3461 (1955 act) and MCL 380.951; MSA 15.4951 (1976 act).

school district whenever more than ten percent of the taxable valuation of property in that district is to be detached from the district and transferred to an adjacent district. The issue presented is whether the ten percent requirement applies to each single transaction or if it applies on an accumulated basis.

We would hold that in order to effectuate the purpose of the statute, which prohibits the piecemeal destruction of a school district without the approval of the voters, the ten percent requirement should be read as cumulative in nature. Accordingly, we would reverse the Court of Appeals decision.

I

On May 7, 1975, the State Board of Education approved the request of a group of citizens to transfer their property (hereinafter Elenbaum transfer), constituting 8.4% of the taxable valuation of the Owendale-Gagetown School District, to the Elkton-Pigeon-Bay Port School District. The legality of the Elenbaum group's transfer is not involved in this appeal. On May 14, 1975, the Huron and Tuscola Intermediate Boards of Education denied the petition of the intervening defendants (Goslin) to transfer their property from Owendale-Gagetown to the Cass City School District. The Goslin group appealed this decision to the State Board of Education, which reversed that denial and approved the transfer in an order dated May 19, 1976. The Goslin transfer represents 9.2% of the latest available taxable valuation of the entire Owendale-Gagetown School District.[2]

[2] The record does not reflect whether the figure of 9.2% is based upon a valuation of the entire school district, including the Elenbaum transfer, or only upon the remaining property in the district.

The plaintiff school district commenced suit, in June, 1976, against the State Board of Education in Ingham Circuit Court alleging, *inter alia,* that the Goslin transfer violated. MCL 340.461; MSA 15.3461. The school district claimed that pursuant to the School Code of 1955 a vote of the school district's electors was necessary to effectuate the Goslin transfer. The district contended that the Goslin property combined with the Elenbaum transfer totals 17.6% of the latest taxable valuation of the entire Owendale-Gagetown School District, and thus the ten percent limit was exceeded.[3]

The circuit court reversed the state board's order on August 2, 1976. The trial judge determined that the ten percent requirement is cumulative in nature. The total of all property previously transferred and proposed to be transferred out of the district must be considered. The trial court held that if the cumulative total exceeds ten percent of the latest assessed valuation of the entire school district, there must be approval by the district's electors before the proposed transfer may occur.

The Court of Appeals, in an unpublished per curiam opinion, reversed the trial court's order on the limited ground that the school district lacked standing to raise the question of whether its residents had the right to vote on the property transfer. See *School Dist of City of Lansing v State Board of Education,* 367 Mich 591; 116 NW2d 866 (1962). At this point, the Court of Appeals did not decide the statutory interpretation question.

---

[3] On July 7, 1976, the State Board of Education approved three additional property transfers from Owendale-Gagetown to adjacent school districts. Owendale-Gagetown has also petitioned for review of these transfers. *Owendale-Gagetown School Dist v State Board of Education* (Ingham Circuit Court Docket No. 76-19296-AA).

Our Court denied the school district's application for leave to appeal. 401 Mich 818 (1977). Plaintiff's motion for rehearing, which was treated as a motion for reconsideration, was also denied.[4] 402 Mich 841 (1977). Plaintiff's petition to the United States Supreme Court for a writ of certiorari was denied. 436 US 906 (1978).

The circuit court granted motions adding individual electors of the school district as parties plaintiff and permitting Keith Goslin and others to intervene as parties defendant. On February 16, 1979, the trial judge, concluding that all the proper parties were now before the court, again reversed the order of the state board. He reaffirmed his earlier decision that the valuation limit provided in the statute must be read as cumulative in nature.

The Court of Appeals reversed the order of the trial court, concluding that the statute in question did not require a vote in the instant case. That decision reviewed the "unambiguous language of the statute" and held that the trial court erred by cumulating the previously transferred Elenbaum property with the Goslin property. The Court of Appeals refused to consider the plaintiff's argument that the state board's action was arbitrary

---

[4] Our order read in part:

"MCL 340.461; MSA 15.3461 provides for a vote of the school tax electors on a transfer only when 'the latest available taxable valuation of the area to be detached is more than 10% of the latest available taxable valuation of the entire school district from which it is to be detached'. The record discloses that the latest available tax valuation of the area to be detached in this case is less than 10% of the Owendale-Gagetown School District as constituted at the time of the State Board of Education decision." 402 Mich 841, 842.

We reject the suggestion that this order decided the issue in the instant case. Our language indicates that the Goslin transfer by itself was less than ten percent of the district's valuation. We did not decide if the statute required an accumulation of transfers.

and capricious and therefore constituted an abuse of discretion. *Owendale-Gagetown School Dist v State Board of Education,* 92 Mich App 719; 285 NW2d 435 (1979).

This Court granted leave to appeal both the statutory interpretation and abuse of discretion questions. 408 Mich 930 (1980).

## II

The controlling statute in this case, MCL 340.461; MSA 15.3461, provides:

"The county board of education may, in its discretion, detach territory from 1 district and attach it to another when requested to do so by resolution of the board of any district whose boundaries would be changed by such action, or when petitioned by not less than 2/3 of the resident owners of the land to be transferred. The county board of education shall take final action in regard to the resolution or petition within a period of 60 days of the receipt of the resolution or petition. Only territory contiguous to a district may be transferred. *Whenever the latest available taxable valuation of the area to be detached is more than 10% of the latest available taxable valuation of the entire school district from which it is to be detached,* the action of the county board of education directing such detachment shall not be valid unless approved, at an annual or special election called for that purpose in the district from which the detachment is to be made, by an affirmative vote of a majority of the school tax electors of the district, voting thereon." (Emphasis added.)[5]

[5] In the instant case a joint meeting of two intermediate school boards was held. See MCL 340.463; MSA 15.3463 and MCL 340.292a; MSA 15.3292(1). MCL 340.467; MSA 15.3467 provided for appeal to the State Board of Education.

The relevant provisions of the School Code of 1976 are MCL 380.951; MSA 15.4951, MCL 380.953; MSA 15.4953, and MCL 380.971; MSA 15.4971.

Owendale-Gagetown argues that we should construe the statute to require cumulation of property transfers so as to trigger the popular vote requirement in the instant case. Such a construction, it is argued, will give this section force and validity. The opposite construction would nullify the statute. Furthermore, the district contends that even if a literal interpretation of the statute suggests that the ten percent requirement was not met, such a reading of the statute does not comport with the purpose of the statute. Finally, it is argued that a literal interpretation would permit easy circumvention of the statute.

The state board contends that the decision of the Court of Appeals is in accord with the plain meaning of § 461. "Area to be detached", argues the state board, clearly refers to only the Goslin property transfer petition in the instant case.

### III

Our reading of the statute leads us to the conclusion that this section of the School Code of 1955 was designed to permit minor alterations in school boundaries to be accomplished in a simple manner. The ten percent requirement prevents major alteration of a school district without the consent of its residents. These complementary statutory purposes are derived from the language of the section, consideration of other sections of the School Code of 1955, and a review of predecessor legislation.

In *Ira School Dist No 1 Fractional v Chesterfield School Dist No 2 Fractional,* 340 Mich 678; 66 NW2d 72 (1954), this Court construed a predecessor statute to § 461. 1948 CL 353.1; MSA 15.407 provided:

"A township board may in its discretion detach the property of any person or persons from 1 district and attach it to another, or divide or consolidate districts: Provided, however, That * * * no district shall be divided into 2 or more districts without the consent of the majority of the qualified school electors of said district present and voting at a meeting called for such purpose, and 2 or more districts shall not be consolidated without the consent of a majority of the qualified school electors of each district present and voting at a meeting called for that purpose."

That legislation permitted a township board to detach property without the consent of a majority of the electors of the district from which the land was to be detached. A vote of the district was required only when the district was to be divided or consolidated. The controlling question in *Ira School Dist* was whether a vote was required in that district before 70% of the assessed valuation of the property located therein could be detached and annexed to the Chesterfield School District. The majority superficially analyzed the statute and concluded that no vote was required because property was detached, *i.e.,* no district was divided or consolidated with another.

Almost immediately thereafter, the School Code of 1955 was enacted. A comparison of § 461 of that act with the 1948 Compiled Laws provision demonstrates an apparently strong reaction of the Legislature to the result permitted by *Ira School Dist.* That determination brought into focus the realization that small districts could be effectively destroyed under the prior law. It therefore follows that the Legislature enacted the ten percent requirement to reinforce the legislative policy of protecting the territorial and fiscal integrity of school districts. There is "a settled policy of the State to strengthen the graded schools and to

make it difficult to take from them portions of their territory". *School Dist No 1, Fractional, of Twps of Bethany & Pine River & City of St Louis v Joint Twp Boards of Twps of Bethany & Pine River,* 233 Mich 327, 331; 207 NW 5 (1925).

We cannot agree with an interpretation of § 461 which permits a continual piecemeal dismemberment of a school district without the approval of the voters. Such a construction does violence to the statutory purpose evidenced, in part, by the changes in language of the 1955 act.

Furthermore, the Legislature has enacted and maintained other provisions concerning boundary changes and the elimination of school districts. MCL 340.431; MSA 15.3431 permits annexation of one district to another, but only after a majority vote of the electors of the district to be annexed. MCL 340.401-340.415; MSA 15.3401-15.3415 sets forth the procedure for consolidation of two or more school districts and requires a vote. The division of a school district also requires a vote of the electors. MCL 340.446; MSA 15.3446. Thus, it appears, a vote is required whenever a viable school district is scheduled to disappear and whenever there is to be a significant alteration or detachment of property. This legislative policy further indicates that the Legislature did not intend to permit a piecemeal, *seriatim* annexation or destruction of a school district to occur without a vote of electors.

Finally, even assuming that a literal reading of the statute could permit the Goslin transfer to be effective without a vote, we reject that view. It is well-settled that the spirit and purpose of a statute should prevail over the strict letter. See, *e.g., People v Lynch,* 410 Mich 343, 354; 301 NW2d 796 (1981), *People v McFarlin,* 389 Mich 557, 563-565;

208 NW2d 504 (1973), *Stambaugh Twp v Iron County Treasurer,* 153 Mich 104, 107; 116 NW 569 (1908). The specific language of this statute, when presented in the proper context, has less than a clear and precise meaning. The phrases "area to be detached" and "entire school district" are ambiguous when viewed in light of the statutory purpose. These phrases may be construed narrowly or broadly. "Area to be detached" may mean either the territory involved in a single transfer or an accumulation of the current and previous property transfers. Similarly, "entire school district" may mean the district as constituted at the time of the latest transfer or the entire school district as it originally existed, prior to any transfers of property. We must construe the language of the statute in light of the statutory purpose to permit only minor alterations in school district boundaries to be accomplished without a vote. Thus, we conclude that the statute requires consideration of property transfers on an accumulated basis.

Each party claims that the statutory interpretation advanced by the opposing party leads to an absurd result, citing *People v McFarlin, supra.* The state board argues that to permit one transfer of property constituting ten percent of the taxable valuation of the school district without a vote, but to require a vote when one lot with a single-family dwelling is sought to be transferred the next day leads to an absurd result. We disagree. That result may be characterized as absurd only if the statute does not seek to preserve the territorial and fiscal integrity of a school district, aside from minimal detachments. Yet, we have already concluded that preserving a district is a significant purpose of this legislation. A vote of the electors is mandated before any significant alterations to a school dis-

trict's boundaries are permitted. It became neces-
sary to draw a line at some point.

On the other hand, the school district contends
that to permit continuous nine percent property
transfers leads to an absurd result. This result and
procedure invites a stark circumvention of the
underlying purpose of the statute. It permits a
school district to lose, one piece at a time in
separate petitions, a significant portion of its tax-
able valuation, potentially well in excess of ten
percent, without the statutorily mandated vote.
We are persuaded that this type of consequence is
what the Legislature sought to prevent.

Accordingly, we conclude that the statute re-
quires a cumulative reading of the ten percent
requirement. This construction necessarily follows
from the statutory purpose.

Our resolution of the issue of statutory interpre-
tation renders unnecessary any consideration of
the issue of abuse of discretion.

We would reverse and remand this case to the
Ingham Circuit Court for further proceedings. No
costs, a public question being involved.

KAVANAGH and LEVIN, JJ., concurred with
BLAIR MOODY, JR., J.