**GWINN AREA COMMUNITY SCHOOLS, et al., Plaintiffs-Appellants,**

v.

**STATE OF MICHIGAN, et al., Defendants-Appellees.**

No. 83-1720.

United States Court of Appeals, Sixth Circuit.

Argued May 4, 1984.

Decided Aug. 10, 1984.

Thomas L. Butch (Lead Counsel), Peter W. Strom (argued), Butch, Quinn, Rosemurgy, Jardis, Valkanoff, Escanaba, Mich., for plaintiffs-appellants.

John A. Smietanka, U.S. Atty., Grand Rapids, Mich., Edward R. Cohen (argued), Dept. of Justice, Civil Division, Robert S. Greenspan, Washington, D.C., Frank J. Kelley, Atty. Gen. of Mich., Louis J. Caruso, Paul J. Zimmer (argued), Asst. Attys. Gen., Lansing, Mich., for defendants-appellees.

Before LIVELY, Chief Judge, JONES, Circuit Judge, and TIMBERS, Senior Circuit Judge.*

LIVELY, Chief Judge.

The questions which the plaintiffs raised in this case are whether the Michigan State School Aid Act of 1979, Mich. Comp. Laws Ann. (MCLA) §§ 388.1601–.1772 (Michigan Act) meets the requirements of 20 U.S.C. §§ 236–240 (1980) (Impact Aid Act) and whether the Michigan Act is unconstitu-

* The Honorable William Timbers, Senior Circuit Judge, U.S. Court of Appeals for the Second Circuit, sitting by designation.

tional under both federal and Michigan law. The plaintiffs-appellants are a school district, a taxpayer of the school district and a student enrolled in one of the schools of the district. The defendants-appellees are the State of Michigan, the State Board of Education of Michigan and the state superintendent of instruction, and the United States Department of Education and its Secretary. The district court denied the plaintiffs' motion for a preliminary injunction as moot after granting summary judgment in favor of the state defendants and dismissing all claims against the federal defendants.

## I.

### A.

Gwinn Area Community Schools (the district) is a school district in sparsely inhabited Marquette County, Michigan. A large U.S. Air Force base is located within its boundaries and 63% of the students in the district schools are children of military and civilian personnel assigned to the base. The United States makes payments to the district under the Impact Aid Act to compensate for the fact that the land occupied by the Air Force base has been removed from local tax rolls and the district is required to furnish educational facilities and opportunities to dependents of persons assigned to the base. In addition the State of Michigan makes payments to the district under the Michigan Act. Since 1980 the state has reduced its payments to the district each year by applying a formula which reduces state aid by a percentage of federal impact aid which a district receives. This deduction is authorized by a provision of the Impact Aid Act which was added by a 1974 amendment. Prior to 1974 the states were not permitted to make a deduction for federal impact aid. The 1974 amendment provided in part:

[I]f a State has in effect a program of State aid for free public education for any fiscal year, which is designed to equalize expenditures for free public education among the local educational agencies of that State, payments under this subchapter for any fiscal year may be taken into consideration by such State in determining the relative—

(i) financial resources available to local educational agencies in that State; and

(ii) financial need of such agencies for the provision of free public education for children served by such agency, provided that a State may consider as local resources funds received under this subchapter only in proportion to the share that local revenues covered under a State equalization program are of total local revenues.

Whenever a State educational agency or local educational agency will be adversely affected by the operation of this subsection, such agency shall be afforded notice and an opportunity for a hearing prior to the reduction or termination of payments pursuant to this subsection. 20 U.S.C. § 240(d)(2)(A) (1982).

In their complaint the plaintiffs charged that the Michigan Act does not provide an "equalized formula" as contemplated by § 240(d)(2)(A)[1] and that the Michigan Department of Education had no right to deduct federal impact aid in calculating state aid. The complaint also charged the state defendants with failing to comply with the requirement of the Michigan Constitution that the state provide a meaningful system of free public education, and with violating the equal protection and due process guarantees of the Constitution of the United States and the Michigan Constitution. In addition to an injunction the plaintiffs sought a declaratory judgment that the state defendants were violating the various constitutional provisions by the manner in which they administer state aid laws in conjunction with federal impact aid and

---

**1.** Since we agree with the district court that plaintiffs failed to exhaust available administrative remedies we do not reach the question of whether the Michigan Act satisfies the requirements of the Impact Aid Act for deductions in state aid based on impact aid received and do not consider the language of the Michigan Act.

that the federal defendants have breached congressionally imposed obligations by allowing the State of Michigan to deduct from the plaintiff district "the very benefaction that the federal impact aid statutes were intended to bestow ...."

This action was filed in a Michigan circuit court and removed to the federal district court on petition of both the federal and state defendants. Thereafter the federal defendants filed a motion to dismiss and the state defendants filed a motion for summary judgment. The motion for summary judgment was supported by the affidavit of a supervisor within the Michigan Department of Education and exhibits including transcripts of proceedings before the Department concerning the deduction of federal impact aid funds from state equalization allocations.

### B.

The district court filed an opinion with its judgment. See *Gwinn Area Community Schools v. State of Michigan*, 574 F.Supp. 736 (W.D.Mich.1983). The district court summarized the plaintiffs' position as being that the formula used by the state "unduly shifts a tax burden to them." *Id.* at 741. In a footnote the court pointed out that the argument concerning the relationship between the Michigan Act and the Impact Aid Act was somewhat unclear. Nevertheless, the district court concluded that no judicial attack could be mounted on the state aid formula without first submitting the controversy to the Secretary of Education through administrative procedures provided by federal regulations. *Id.* n. 1. The court found that there had been no exhaustion of administrative remedies with respect to school years 1980–81, 1981–82 and 1982–83, and found that the plaintiffs were involved in administrative procedures for the school year 1983–84 at the time of its decision. Insofar as it challenged the formula for 1983–84 the complaint was dismissed without prejudice. All other claims were dismissed with prejudice.

The district court determined that the school district lacked standing to assert claims against the State of Michigan for violation of the United States Constitution, but that the individual plaintiffs did have standing to make such claims. Considering these claims of the individual plaintiffs, the court found that the Michigan Act does not create a "suspect classification" and that it places no burden on a "fundamental interest." The court then concluded that the state aid formula survived a "rational relationship" analysis and did not violate equal protection. *Id.* at 748–54. The district court also found that the substantive due process claims of the individual plaintiffs lacked merit. The court found no confiscation in the allowance of a deduction from state aid for federal impact aid and noted that the Fourteenth Amendment does not require absolute equality in state schemes of taxation. The district court did not address the plaintiffs' claims that action of the state defendants violated the Michigan Constitution.

### II.

We have carefully considered each argument made by the plaintiffs-appellants, but will not treat with all of them in detail. The plaintiffs' arguments were fully considered and answered in the district court's published opinion and we agree with the conclusions of the district court on most of the issues.

■ The district court was clearly correct in dismissing the claims against the federal defendants for failure of the plaintiffs to exhaust administrative remedies. The Department of Education is given responsibility for administering federal impact aid. That department's regulations provide specific standards by which the Secretary of Education is to determine each school year whether a state aid program meets the statutory requirement of a program "designed to equalize expenditures for free public education among the local educational agencies of that State ...." 34 C.F.R. §§ 222.60–222.68. Further, § 222.69 provides for notice and an opportunity for hearing to any local educational agency adversely affected by a determina-

tion, and it provides specific procedural rules. While representatives of the plaintiff district took some of the procedural steps, it is clear that they did not exhaust administrative remedies with respect to school years 1980–81 and 1981–82. The district court treated the exhaustion issue fully in its opinion and we agree with its conclusions. See *Gwinn Area Community Schools*, 574 F.Supp. at 743–48. One finding of fact with respect to exhaustion is clearly erroneous. The district court found that the plaintiffs had failed to exhaust their administrative remedies for the school year 1982–83. The record discloses, and the defendants concede, that administrative remedies related to that year are still in progress. Therefore, on remand the district court will amend its judgment to dismiss claims against the federal defendants based on allocation of state aid for the school year 1982–83 without prejudice.

### III.

### A.

■ We agree with the district court's treatment of the standing question. The school district, as a political subdivision of the State of Michigan, was in no position to attack state action as violative of the United States Constitution. In *Lansing School District v. State Board of Education*, 367 Mich. 591, 116 N.W.2d 866 (1962), a local school district charged the state board with equal protection violations of the federal and state constitutions in altering school district boundaries. The Michigan Supreme Court wrote, "Plaintiff school district is an agency of the State government and is not in a position to attack its parent." *Id.* at 600, 116 N.W.2d 866.

The individual plaintiffs, however, do have standing to challenge the state aid formula as administered by the defendant Phillip E. Runkel, state superintendent of instruction.[2] As the district court pointed out "municipal taxpayer standing" is different from "federal taxpayer standing." Both the district taxpayer and the district student are in positions to suffer direct and tangible injuries from the deduction of federal impact aid from state aid payments.

### B.

■ The district court relied primarily on *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), in concluding that the Michigan Act does not violate the right to equal protection of the laws guaranteed by the Fourteenth Amendment. We believe Judge Hillman correctly construed *Rodriguez* and properly applied a test of rational relationship between the legislative classification and a legitimate state interest. *Gwinn Area Community Schools*, 574 F.Supp. at 748–54. On appeal the plaintiffs argue that the district court applied the wrong law in holding that the federal equal protection claims presented no genuine issues of material fact. They argue that this case is more like *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), than *Rodriguez*. In *Plyler*, the state aid program had the effect of totally denying children of illegal aliens a public school education. While affirming that education is not a fundamental right, the Court considered the enduring disabling effect on children which flowed from this denial and concluded it could "appropriately take into account its costs to the Nation and to the innocent children who are its victims." *Id.* at 224, 102 S.Ct. at 2398. The Court found

---

**2.** We discuss the Eleventh Amendment to the United States Constitution in Part IV of this opinion. The district court lacked jurisdiction over the claims against the State of Michigan and the State Board of Education because of the immunity from suit in federal courts granted by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman*, — U.S. —, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). The district court did have jurisdiction over the federal claims against the defendant Runkel under the holding of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Since the application of the Eleventh Amendment to these claims does not require a result different from that reached by the district court, we have deferred fuller discussion of Eleventh Amendment principles to Part IV, where application of those principles to the state law claims does require a different result.

that the statute which so classified school children could not be considered rational because it furthered no substantial goal of the state. *Id.* This requirement was repeated in Justice Brennan's summary statement of the *Plyler* holding:

> If the State is to deny a discrete group of innocent children the free public education that it offers to other children residing within its borders, that denial must be justified by a showing that it furthers some substantial state interest.

*Id.* at 230, 102 S.Ct. at 2402.

Though the Court used "rational" test language in its opinion the requirement of a substantial state interest indicates that it subjected the Texas statute in *Plyler* to a standard of scrutiny somewhat stricter than "rational relationship." The concurring and dissenting Justices read the majority opinion in this way. See 457 U.S. at 235 & n. 3, 102 S.Ct. at 2404 & n. 3 (Blackmun, J., concurring); *id.* at 238–39 & n. 3, 102 S.Ct. at 2406–07 & n. 3 (Powell, J., concurring); *id.* at 248, 102 S.Ct. at 2411 (Burger, C.J., dissenting). It appears to be accepted that the majority applied a middle-level "heightened" scrutiny in *Plyler.* See *The Supreme Court, 1981 Term,* 96 Harv. L.Rev. 62, 130–33 (1982). *Plyler* does not fit neatly into previous structures of equal protection analysis. Nevertheless, we do not believe it controls the present case. The two cases are distinguishable primarily on the fact that in *Plyler* the Texas statute permitted a class of children to be excluded totally from the public schools.

The plaintiffs in the present case charged in their complaint that the formula which permitted the state to deduct federal impact aid would lead to the closing of all schools in the district. However, the motion for summary judgment and the affidavit of the state board supervisor contained exact figures with respect to the state aid received by the district and the deductions for federal impact aid in each of the years in suit. The affidavit established that the state deducted only a small percentage of the federal impact aid each year in calculating the state aid payable to the district.

This affidavit disclosed that the deduction of a portion of federal impact aid from state aid payable to the district was but a minor ingredient of the deficit problem of the district. Nothing in the record supports a contrary view. As the district court pointed out, the plaintiffs did not allege that bankruptcy would be averted by requiring the state to discontinue the practice of making the deduction. 574 F.Supp. at 754. There was no genuine issue of material fact with respect to the unsupported claim that continuation of the state's practice would ultimately result in an "absolute denial of educational opportunities" to children of the district. The federal equal protection claim is controlled by *Rodriguez* rather than *Plyler* and the district court correctly ruled that the state defendants were entitled to judgment thereon as a matter of law. Rule 56(c), Fed.R.Civ.P.

**C.**

██ The due process claim of the plaintiffs was not as clearly articulated as their equal protection claim. As we understand their position, the plaintiffs contend that the state arbitrarily denied the district, its taxpayers and students the benefits of compensation which Congress has allocated to the district to offset its loss of tax revenue and the cost of educating federal dependents. This argument overlooks the fact that Congress specifically provided for deductions of federal impact aid in computing state aid in § 240(d)(2)(A). The plaintiffs rely on language from a single district court opinion to support their claim. See *Shepheard v. Godwin,* 280 F.Supp. 869, 874 (E.D.Va.1968). That case was decided before passage of the 1974 amendment to the Impact Aid Act and held that a state formula which deducted impact aid in calculating state aid was unconstitutional as violative of the supremacy clause of the Constitution. The 1974 amendment deprives the *Shepheard* decision of any force today.

██ The district court correctly held that the state has wide discretion in the alloca-

tion of tax burdens among its inhabitants and that due process considerations come into play only when state action is so arbitrary as to render a taxation program confiscatory. *Gwinn Area Community Schools*, 574 F.Supp. at 754–55.

Thus we conclude, in agreement with the district court, that the plaintiffs failed to establish the existence of any genuine issue of material fact with respect to their claims under the United States Constitution.

## IV.

■ The district court did not address the claims that the state defendants had violated the Michigan Constitution. Nevertheless, these claims were dismissed with prejudice along with the other claims. The basis of the district court's dismissal is not clear. It appears most likely that the district court treated these claims as pendent state claims, subject to dismissal at the court's discretion after the federal claims had been found wanting. In this court the state defendants argue that the equal protection and due process clauses of the federal and Michigan constitutions are indistinguishable. If a claim is insufficient under these provisions of the United States Constitution the same result is required under the Michigan Constitution, they contend. The district court made no such determination, however.

## A.

The Eleventh Amendment was not considered by the district court and has been referred to obliquely at best in this court. That amendment withholds from courts of the United States the power to entertain suits against a state by its own citizens as well as by citizens of other states. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The Supreme Court has recently written that "[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst State School & Hospital v. Halderman*, — U.S. ——, 104 S.Ct. 900,

919, 79 L.Ed.2d 67 (1984). *Pennhurst* holds that a claim against state officials for violating state law in carrying out their official responsibilites is a claim against the state which comes under the ban of the Eleventh Amendment. In the present case the plaintiffs have charged the State of Michigan, the state department of education and the state superintendent of public instruction with violating the Michigan Constitution. Unless some feature of the case removes these claims from its operation, the Eleventh Amendment appears on its face to prohibit a federal court from considering them.

## B.

■ This case does have some unusual features. Not only did the state defendants not object to the district court's hearing this case, they acted affirmatively to bring this about by joining in the federal defendants' petition to remove the case from the state circuit court. The Eleventh Amendment preserves to the states one aspect of sovereign immunity by protecting them from suit in the courts of a different sovereign. A state may waive this immunity by consenting to suit against it in federal court, but this consent must be "unequivocally expressed." *Id.* 104 S.Ct. at 907; see also *Kennecott Copper Corp. v. State Tax Commission*, 327 U.S. 573, 577, 66 S.Ct. 745, 747, 90 L.Ed. 862 (1946) ("clear declaration of a State's consent to suit against itself in the federal court on fiscal claims is required."). In *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 462, 65 S.Ct. 347, 349, 89 L.Ed. 389 (1945), the Supreme Court held that where an action is brought against a state officer under a statute, if the action constitutes one against the state, the Eleventh Amendment precludes suit in a federal court unless immunity from suit is waived in the statute itself. In *Ford Motor Co.* the Court also interpreted a section in the state statute authorizing an action "in any court of competent jurisdiction" as consent to be sued in state courts only. *Id.* at 465, 65 S.Ct. at 351. The only consent

language in the Michigan Act provides that the state board of education may be sued "in all the courts in this state." M.C.L.A. § 388.1007. We find no clear indication in the Michigan Act that the state has consented to suit in the federal courts and conclude that the actions of attorneys representing the state defendants in this case in joining the removal petition cannot be treated as supplying a consent which the legislature withheld.

The claims in question are covered by the Eleventh Amendment. The fact that they are pendent to federal claims over which the district court had original jurisdiction is not significant. The Supreme Court held in *Pennhurst* that the doctrine of pendent jurisdiction does not displace "the explicit limitation on federal jurisdiction contained in the Eleventh Amendment." 104 S.Ct. at 917. Thus, we must reverse that portion of the district court judgment which dismissed these claims with prejudice.

### C.

Having concluded that the federal court was barred by the Eleventh Amendment from entertaining the claims against the state defendants based on alleged violations of the state constitution, the court must determine the proper disposition of those claims. The choices are dismissal without prejudice and remand to the state circuit court from which this case was removed. After due consideration we have determined that the proper course is to direct the district court to remand these claims to the state court. In doing so we adopt the procedure most often followed when only pendent state claims remain in removed cases which originally had both federal and state claims.

This court has approved remand by the district court of pendent state claims after the sole basis of federal jurisdiction has been eliminated by an amendment to the complaint. See In re *Romulus Community Schools*, 729 F.2d 431 (6th Cir.1984). In a case where the only federal basis of jurisdiction was removed by summary judgment on the sole federal claim, the court in *Hofbauer v. Northwestern National Bank of Rochester*, 700 F.2d 1197,

1201 (8th Cir.1983), found remand of a pendent state law claim to be the "prudent course." When the district court has failed to address the question of how to dispose of a pendent state claim which has lost its supporting federal base the court of appeals may exercise its discretion in favor of remand. *Brough v. United Steelworkers of America*, 437 F.2d 748, 750 (1st Cir. 1971).

Remand to the state court is an equitable treatment of the claims in this case. The plaintiffs originally chose a state forum for all their claims. There is no prejudice to the state defendants in having these cases considered by a state court. In fact, at oral argument counsel for the state defendants observed that *Pennhurst* may require remand of the state constitutional claims to the state courts.

The judgment of the district court is affirmed in part and reversed in part and the case is remanded to the district court. The claims against the federal defendants based on allocation of state aid for the school year 1982–83 are to be dismissed without prejudice. The claims against the state defendants for alleged violations of the Michigan Constitution are to be remanded to the state circuit court from which this case was removed.

No costs are allowed on appeal.