GOBLER v AUTO-OWNERS INSURANCE COMPANY

Docket No. 76011. Argued October 8, 1986 (Calendar No. 13). Decided April 20, 1987.

Linda K. Gobler brought an action in the Ingham Circuit Court against Auto-Owners Insurance Company, seeking to recover no-fault survivors' benefits as a result of the accidental death of her husband, Steven. At the time of his death, Steven was an unemployed full-time student, who had completed requirements for a degree in forestry. The degree was awarded posthumously. Prior to his death, Steven had applied to the United States Forestry Service which had certified him eligible for employment. Six months after Steven's death, the forestry service forwarded to him an inquiry of availability. The court, James R. Giddings, J., found that Steven would have sought and secured full-time employment with the forestry service, awarded benefits on the basis of the amount he would have earned, in addition to attorney fees and interest accruing from the commencement of the trial, and granted partial accelerated judgment for the defendant on the plaintiff's claim for survivors' benefits. The Court of Appeals, ALLEN and HOFFIUS, JJ. (M. J. KELLY, P.J., concurring in part and dissenting in part), reversed in an opinion per curiam, holding the trial court's finding that the deceased would have been employed by the forestry service clearly erroneous (Docket No. 63718). The plaintiff appeals.

In an opinion by Justice ARCHER, joined by Justices LEVIN, BRICKLEY, and CAVANAGH, the Supreme Court *held:*

Under § 3108 of the no-fault act, survivors of decedents are entitled to benefits for loss of income. Entitlement is not

REFERENCES

Am Jur 2d, Automobile Insurance §§ 361, 363.

Am Jur 2d, Insurance §§ 1771 et seq.

What constitutes bad faith on part of insurer rendering it liable for statutory penalty imposed for bad faith in failure to pay, or delay in paying, insured's claim. 33 ALR4th 579.

Entitlement of child, spouse, parent, or other person to survivor's loss benefit under no-fault insurance acts. 12 ALR4th 975.

Validity and construction of "no-fault" automobile insurance plans. 42 ALR3d 229.

dependent upon proof that the decedent was employed on the date of the accidental injury causing death; rather, if the deceased was unemployed at the time of the accident, but received an offer of employment subsequent to the date of the accident which the surviving dependent can substantiate, the salary that the deceased would have earned from the employment to which the offer applied should be considered in the calculation of survivors'-loss benefits. Such benefits accrue at the time the loss occurs.

1. Section 3108 of the no-fault act provides for payment of personal protection benefits for a survivor's loss of contributions of tangible things of economic value that a dependent of a deceased would have received for support had the deceased not suffered the accidental bodily injury which caused death. Such contributions refer to those which would have been received in the future by the dependents had the deceased not died. The benefits accrue not when the injury occurs, but as the survivors' loss is incurred, i.e., subsequent to the occurrence of the fatal injury. While a decedent's past earnings may be used as one method of computing survivors'-loss benefits, calculation of such benefits is not limited to the decedent's past income.

2. In this case, the decedent had completed an application to the United States Forestry Service within twelve months prior to his death, and the forestry service had forwarded an inquiry of availability to the decedent six months after he died. Absent special circumstances, the mere forwarding of such an inquiry is not an offer of employment. However, on the basis of the testimony of the forestry service's agent regarding the unique hiring procedure of the service and the unavailability of certain of the other candidates for the position, the trial court concluded that the forestry service had offered the position to the decedent and that he would have been hired by the service had he survived. No showing was made which would lead to the conviction that the trial court was mistaken in its findings of fact.

3. The penalty interest awarded to the plaintiff by the trial court did not begin to accrue upon January 1, 1979, but at the time the defendant actually learned that the deceased received what amounted to a job offer from the forestry service, when the forestry service recruiter testified.

4. Attorney fees may be awarded under the no-fault act where an insurer unreasonably refuses or delays payment on a claim. A refusal or delay will not be found to be unreasonable where it is the product of a legitimate question of statutory construction or constitutional law, or a bona fide factual uncer-

tainty. In this case, remand to the Court of Appeals is required for a more thorough disposition of the defendant's substantive arguments regarding its good faith.

Reversed and remanded.

Justice BOYLE, concurring in part and dissenting in part, agreed that relief under the no-fault act was not intended to be denied solely because a decedent was unemployed at the time of death and that § 3107a was not intended to control computation of survivors' benefits under § 3108 where a decedent was unemployed at the time of death. In this case, however, the plaintiff did not establish that the decedent was employed at the time of his death. The "Inquiry of Availability" from the potential employer was received by the decedent's spouse six months after his death and thus cannot support an award of survivors' benefits under § 3108. The case should be remanded for a determination of survivors' benefits on the basis of past employment which may be calculated by a method analogous, but not limited to, the method specified in § 3107a. In addition, because there is evidence that the defendant initially may have been justified in denying the plaintiff's claim, the award of interest and attorney fees should be vacated and the case remanded to the trial court for further proceedings regarding that question.

Chief Justice RILEY, writing separately, stated that in cases in which a decedent was temporarily unemployed at the time of death, survivors'-loss benefits for the loss of support of income from wages should be calculated by reference to the decedent's past income, analogous to the calculation of wage-loss benefits under § 3107a. Where future employment can be clearly established, survivors' benefits may be calculated on the basis of the amount of income from wages the decedent would have earned following temporary unemployment. In this case, the record does not clearly establish that the decedent would have been employed by the United States Forestry Service. Thus, the judgment of the Court of Appeals should be affirmed in part and reversed in part, and the case should be remanded to the trial court for a recalculation of survivors'-loss benefits and reinstatement of the remainder of its judgment.

Justice GRIFFIN took no part in the decision of this case.

139 Mich App 768; 362 NW2d 881 (1984) reversed.

1. INSURANCE — NO-FAULT — SURVIVORS' BENEFITS — OFFERS OF EMPLOYMENT.

Survivors of decedents are not entitled to benefits for loss of income only if it can be proved that the decedent was employed

on the date of the accidental injury causing death; rather, if the deceased was unemployed at the time of the accident, but received an offer of employment subsequent to the date of the accident, which the surviving dependent can substantiate, the salary that the deceased would have earned from the employment to which the offer applied should be considered in the calculation of survivors'-loss benefits; such benefits accrue at the time the work or survivors' loss occurs (MCL 500.3108; MSA 24.13108).

2. INSURANCE — NO-FAULT — ATTORNEY FEES.

A refusal or delay by an insurer of payment of personal or property protection benefits will not be found to be unreasonable where it is the product of a legitimate question of statutory construction or constitutional law, or a bona fide factual uncertainty (MCL 500.3148[1]; MSA 24.13148[1]).

*Carruthers & Halverson Associates* (by *James G. Halverson*) for the plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *James L. Borin*), for the defendant.

ARCHER, J. This case requires judicial discovery of the intent of the Legislature concerning a provision of the no-fault automobile insurance act. MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.*

We granted leave to appeal to determine the meaning of the expression "contributions of tangible things of economic value . . . that dependents of the deceased . . . *would have received* for support during their dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death" as used in § 3108 of the act. MCL 500.3108; MSA 24.13108. We read the quoted language of § 3108 in the light of the no-fault act as a whole and conclude that the Legislature did not intend that survivors be compensated for lost income only if they can prove that the deceased was employed on the date of the accidental bodily injury causing death. If the deceased was unem-

ployed at the time of the accident, but received an offer of employment subsequent to the date of the accident which the surviving dependents can substantiate, the salary that the deceased would have earned from the employment to which the offer applied should be considered in the calculation of survivors'-loss benefits under § 3108.

I

The facts and procedural history in this case are set forth in detail in *Gobler v Auto-Owners Ins Co,* 139 Mich App 768; 362 NW2d 881 (1984). Steven Gobler, plaintiff's decedent,[1] was killed in an automobile accident on March 16, 1976. Auto-Owners Insurance Company was Mr. Gobler's no-fault automobile insurer. On the day Gobler died, he completed the last requirements for a degree in forestry at Michigan State University. He was enrolled as a full-time student and was unemployed at the time of his demise. Michigan State University awarded Gobler a bachelor of science degree in forestry posthumously.

Plaintiff testified that before Gobler died, he was planning to pursue a career in forestry on the west coast. Plaintiff filed an application for survivors' benefits with Auto-Owners. Auto-Owners paid the ambulance, hospital, and funeral bills for plaintiff's decedent. Plaintiff's claim for survivors' benefits, however, was denied because Gobler was unemployed at the time of the accidental bodily injury that caused his death.

Steven Gobler was last employed by the United States Forestry Service in Hoodsport, Washington. In 1975, he worked for the forestry service as a fire fighter from July to November and earned

---

[1] Plaintiff is the surviving widow of Steven Gobler. Plaintiff and Gobler were married in 1971.

$4,064.86. During the trial, his job with the service was described as seasonal employment. In January, 1976, he resumed his studies as a full-time student at Michigan State University. From January until the date of his death, he was unemployed.

Sometime in 1975, Gobler filed an application with the United States Forestry Service which was entered on the Civil Service Registry. Before a person qualifies for inclusion on the registry of eligibles, certain educational requirements in the area of forestry must be completed. Gobler qualified for inclusion on the registry on the basis of his education and superior scholastic standing. Gobler's name was selected from the registry of eligibles and placed on three separate certificates of eligibility. These lists were identical, with the exception of the location of the employment vacancy. Gobler's name was the last name on each of the three lists.[2] The lists upon which Gobler's name appeared resulted in the preparation of an inquiry of availability which was forwarded to Gobler and the other five persons included on the lists. The inquiry was not forwarded to Gobler until September 14, 1976, some six months after he had died.

Shelagh Reed,[3] staffing specialist responsible for recruiting employees for the United States Forestry Service, testified that she forwarded the inquiry of availability to the six persons on the lists of eligibles in an effort to fill three open positions as soon as possible. All three positions

[2] There were a total of six names on each of the three lists. Gobler's name was the sixth name on each list.

[3] At the trial, the trial judge sustained Auto-Owners objection to the testimony of Ms. Reed. A separate record was taken of her testimony because the court ruled that such testimony was irrelevant and immaterial. The trial court subsequently reversed itself and adopted the testimony of Ms. Reed.

were located in the State of California. The positions which were the subject of the inquiry were all GS-7 positions[4] which carried a definite salary and benefit level, and commencement date.[5]

Ms. Reed explained the purpose of the inquiry of availability as follows. The inquiry was prepared for specific vacancies and was forwarded to all the persons who were listed on the lists of eligibles. This allowed the forestry service to find out who was available and to fill the vacancies as soon as possible. If there were three vacancies to be filled, for example, and the top three persons included on the lists were available, those three persons were generally offered the available positions. If, however, the top three persons were not available, the remaining three on the list would be offered the position if there was no adverse information on their applications. Ms. Reed stated that adverse information included an arrest record and termination from prior employment. Ms. Reed further testified that none of the persons included on the list of eligibles would be offered a position if there was any adverse information on their applications. The forestry service did not interview a person before offering a position. Persons included on the list of eligibles were prequalified for any job which the certificate of eligibility covered. The prequalifications included curriculum, grade point average, and prior employment with the forestry service. The fact that Gobler's name was placed on the lists of eligibles demonstrates that he satisfied the three prequalification criteria.

[4] Almost everyone in the federal government is under the general schedule. Only blue collar workers are in another system. At the time Ms. Reed's testimony was taken, the entry level for forestry positions was a GS-5. GS-7 was one grade above the entry level of a beginning professional.

[5] The salary in 1976 for a GS-7 forestry position was $11,046. Benefits included retirement benefits, health care benefits, life insurance, and sick leave.

Ms. Reed indicated that the response to the inquiry of availability which was forwarded to Gobler and the other five persons was as follows. The first and second person declined, the third person failed to reply, the fourth person declined, and the fifth person indicated his availability and was offered a position. Gobler, the sixth person on the list, failed to reply. On the basis of Ms. Reed's testimony, it is clear that three of the persons did not wish to be considered for the three vacancies; one individual expressed his availability to fill one of the vacancies and was accepted and offered a position. Two persons, one of whom was Gobler, failed to reply. Hence, two vacancies remained.

The trial court found that Gobler would have sought and secured full-time employment. The court also concluded that plaintiff had shown by a preponderance of evidence that Gobler's wages would have contributed to plaintiff's support and initially determined that the award should be based on the annualization of $4,064.86, plus interest, that Gobler had earned from his last full-time employment. Plaintiff was also awarded penalty interest and attorney fees.

Relying on *Lewis v DAIIE,* 90 Mich App 251; 282 NW2d 794 (1979), the trial court reversed its earlier ruling and awarded plaintiff survivors' benefits on the basis of the amount Steven Gobler would have earned working for the United States Forestry Service. Plaintiff was further awarded attorney fees of one-third of the total sum of the judgment, penalty, and interest which began to accrue upon the commencement of the trial. Auto-Owners was granted partial accelerated judgment on plaintiff's claim for survivors' benefits. Plaintiff's claim was barred by the statute of limitations from March 16, 1976, the day the deceased died, through December 21, 1976, on the basis that

plaintiff did not timely file her complaint. The trial court limited plaintiff's claim to twenty-seven months.

The Court of Appeals held that the trial court's finding that Steven Gobler would have been employed by the United States Forestry Service was clearly erroneous, stating:

> The evidence presented at trial showed that on the date of Steven Gobler's death, he was not employed. It was only on September 6, six months after Gobler's death, when an "Inquiry of Availability" was received by his wife, that the possibility of employment occurred. This was not an offer of employment, and because of Gobler's death, he could not respond to indicate his interest in the potential positions which might be offered. Since the evidence presented at trial did not support an award of survivor's benefits based on the inquiry of availability and Steven Gobler was otherwise unemployed, the trial judge improperly awarded survivor's benefits. [139 Mich App 776.]

Judge KELLY, concurring in part and dissenting in part, would have affirmed the decision of the trial court.

> I agree that the appropriate inquiry in determining whether survivor's benefits should be awarded under MCL 500.3108; MSA 24.13108 is whether the dependent would have received the support from the decedent if the decedent had not suffered the fatal injury. I cannot, however, agree that the trial court in this case clearly erred in finding that Steven Gobler would have been employed by the U. S. Forestry Service if he had survived the accident. The majority's opinion conveys the impression that the trial court's finding was based solely on plaintiff's receipt of the Inquiry of Availability, which admittedly was not an offer of employment. However, I believe that the

trial court considered the Inquiry of Availability in conjunction with the testimony of Shelagh Reed. I am thus not left with a firm and definite belief that a mistake has been committed by the trial court in finding that Steven Gobler would have been employed by the U. S. Forestry Service at the salary and benefit level and as of the commencement date testified to by Reed. *Precopio v Detroit,* 415 Mich 457, 462; 330 NW2d 802 (1982); *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976). [139 Mich App 777.]

II

Section 3108 of the no-fault act provides for survivors'-loss benefits. The pertinent provisions of this section are as follows:

Except as provided in subsection (2), personal protection insurance benefits are payable for a survivor's loss which consists of a loss, after the date on which the deceased died, *of contributions of tangible things of economic value,* not including services, *that dependents of the deceased at the time of the deceased's death would have received for support during their dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death* and expenses, not exceeding $20.00 per day, reasonably incurred by these dependents during their dependency and after the date on which the deceased died in obtaining ordinary and necessary services in lieu of those that the deceased would have performed for their benefit if the deceased had not suffered the injury causing death. [MCL 500.3108(1); MSA 24.13108(1). Emphasis added.]

Section 3108 further provides that benefits are not payable beyond the first three years after the date of an accident. The trial court in this case initially awarded plaintiff benefits on the basis of decedent's previous temporary employment with

the United States Forestry Service. The trial court based this ruling upon a finding that Gobler was temporarily unemployed within the meaning of § 3107a of the no-fault act, MCL 500.3107a; MSA 24.13107(1). Relying on *Lewis v DAIIE, supra,* the trial court reversed its decision and considered the testimony of Shelagh Reed concerning the inquiry of availability which was forwarded to Gobler after his death. On the basis of Shelagh Reed's testimony, the trial court awarded plaintiff survivors' benefits on the basis of the amount Gobler would have earned working for the United States Forestry Service as a full-time GS-7 employee.

We must determine whether the trial court correctly applied the provisions of § 3108 in reaching this result. In making our determination, we read the language of § 3108 in the light of its legislative history and in the context of the no-fault act as a whole. *Miller v State Farm Mutual Ins Co,* 410 Mich 538; 302 NW2d 537 (1981), reh den 411 Mich 1154 (1981).

A

In *Shavers v Attorney General,* 402 Mich 554, 578-579; 267 NW2d 72 (1978), we said:

> The goal of the no-fault insurance system was to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses.

The no-fault insurance act is remedial in nature and must be liberally construed in favor of persons intended to benefit thereby. *Bierbusse v Farmers Ins Group,* 84 Mich App 34; 269 NW2d 297 (1978).

In *Owendale-Gagetown School Dist v State Bd of Ed,* 413 Mich 1, 8; 317 NW2d 529 (1982), we held:

Legislative intent controls statutory construction, and, in ascertaining such intent, the Legislature must be presumed to have intended the meaning expressed by the language it has chosen. When that language is clear and unambiguous, no further interpretation is necessary. *Dussia v Monroe County Employees Retirement System,* 386 Mich 244; 191 NW2d 307 (1971); *City of Grand Rapids v Crocker,* 219 Mich 178; 189 NW 221 (1922).

There is, however, an exception to this fundamental rule of statutory construction that arises when a literal reading of the statutory language "would produce an absurd and unjust result and would be clearly inconsistent with the purposes and the policies of the act in question." *Salas v Clements,* 399 Mich 103, 109; 247 NW2d 889 (1976).

B

In *Miller v State Farm Ins, supra,* we were asked to determine the meaning of the expression "contributions of tangible things of economic value" as that phrase is used in § 3108. The dispute in the instant case concerns the words "would have received . . . if the deceased had not suffered the accidental bodily injury causing death." In *Miller,* we stated that in determining the meaning of the expression "contributions of tangible things of economic value" the surviving dependents of the deceased would have received for support had the deceased lived "our obligation is to discover and give effect to the Legislature's intention in enacting § 3108 as best we can determine it from the language employed in § 3108 and the no-fault act as a whole, and in light of such legislative history as is available." 410 Mich 555-556.

We must analyze the language of the statute itself. Our primary concern focuses on the meaning of the expression "would have received for support . . . from the deceased if the deceased had not suffered the accidental bodily injury causing death" as used in § 3108.

We must assign to these words their primary and generally understood meaning. *Miller, supra,* 556. We believe that the expression is primarily and generally understood to mean contributions of tangible things of economic value which would have been received in the future by the dependents of the deceased had the deceased not died. Section 3110(4) of the no-fault act provides that "[p]ersonal protection insurance benefits payable for accidental bodily injury accrue *not when the injury occurs but as the allowable expense, work loss or survivors' loss is incurred.* MCL 500.3110(4); MSA 24.13110(4). (Emphasis added.) Hence, the benefits accrue at a time which is subsequent to the occurrence of the fatal injury.

The language of § 3108, read in light of the no-fault act as a whole, convinces us that the Court of Appeals correctly concluded that the Legislature did not intend that survivors be compensated for lost income only if they can prove that the deceased was employed on the date of his death. There is no such requirement contained in the act, and we decline to read such a requirement into the provisions of § 3108.

We turn to the legislative history of § 3108. In January, 1980, a bill was introduced in the House Insurance Committee.[6] The bill as originally introduced would have amended the no-fault act so that work-loss benefits for the temporarily unemployed would have been based on earnings during the last

---

[6] HB 5428.

month of usual employment preceding the accident instead of the last month of full-time employment. The same standard would have been applied to survivors' benefits accruing to the dependents of a person who was temporarily unemployed at the time the fatal accidental bodily injury occurred. A review of the final status report for the 1979-80 regular legislative session indicates that the bill died in committee.

Section 3107a provides that work-loss benefits under personal protection insurance for an injured person temporarily unemployed at the time of the accident or during the period of disability shall be based on earned income for the last month the injured person was *employed full-time* preceding the accident. Section 3107a makes no reference to survivors'-loss benefits and § 3108 does not incorporate by reference the provisions of § 3107a. Hence, § 3107a does not control § 3108.

We believe that the past earnings of the decedent may be used as one method of computing survivors'-loss benefits. However, calculation of survivors' benefits is not limited to the decedent's past income.

Our review of the legislative history of § 3108, as well as our reading of the no-fault act as a whole, convinces us that the Legislature did not intend to automatically deny relief to dependents of a deceased on the sole basis that the deceased was unemployed at the time the accidental bodily injury causing death occurred. We must now determine whether the facts presented in this case come within the meaning of "contributions of tangible things of economic value" which dependents of the deceased "would have received for support" had the deceased "not suffered the accidental bodily injury causing death."

Our reading of the testimony presented by She-

lagh Reed convinces us that the United States Forestry Service made an offer of employment to Gobler six months after he died. It was more than a mere opportunity for employment. As Ms. Reed testified, the only reason Gobler would not have been hired by the service was if he turned the offer down or if "adverse information" about Gobler was contained in the application. Gobler had indicated his interest in being employed by the forestry service when he completed the application within twelve months prior to his death. He also expressed an interest in returning to the west coast to work for the forestry service prior to his death. As stated earlier, all three vacancies were located in California.[7] The record before us contains no adverse information about Gobler.

We acknowledge the fact that in response to defense counsel's statement that the inquiry of availability was not an offer of employment Ms. Reed responded, "That's correct." Further, we agree that, absent special circumstances, the mere forwarding of an inquiry of availability is not an offer of employment. However, the inquiry of availability was forwarded in an attempt to quickly fill three vacancies. The first three persons named on the list of eligibles either declined to fill the vacancy or failed to reply to the inquiry of availability. One person acknowledged his availability and was offered a position. He accepted the offer and filled one of the three vacancies. Hence, two vacancies remained, and Gobler was one of two people left on the list. Thus, on the basis of the complete testimony of Ms. Reed, the unique hiring procedure of the forestry service, and the nonavailability of three of the six persons on the list, the trial court concluded "that it was their

[7] The three vacancies existed in the following forests located in California: Tahoe, Stanislaus, and Mendocino.

[the forestry service's] position that they offered the position" to Mr. Gobler.

The trial court in turn found as fact that Gobler would have been employed by the forestry service had he survived the accident. Before we can reverse the findings of fact of a trial court, we must be firmly convinced that a mistake has been made. We are not convinced that the trial court made a mistake in its factfinding. *Tuttle v Highway Dep't, supra; Precopio v Detroit, supra.*

We reverse the judgment of the Court of Appeals on the question concerning plaintiff's entitlement to survivors'-loss benefits.

Plaintiff was awarded penalty interest. The trial court concluded that the penalty interest began to accrue on January 1, 1979. Penalty interest did not begin to accrue until Auto-Owners actually learned that Gobler received what amounted to a job offer from the forestry service. The record establishes that Auto-Owners became aware of the job offer when Shelagh Reed testified.

The circuit court awarded plaintiff attorney fees on the basis that it was unreasonable for defendant to fail to pay survivors' benefits. A court may award attorney fees for unreasonable refusal or unreasonable delay in making payments under the no-fault act. However, a refusal or delay in payments by an insurer will not be found "unreasonable" within the meaning of § 3148 where the delay is the product of a legitimate question of statutory construction, constitutional law, or even a bona fide factual uncertainty. *Liddell v DAIIE,* 102 Mich App 636, 650; 302 NW2d 260 (1981).

MCL 500.3148(1); MSA 24.13148(1) provides:

An attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance bene-

fits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

The Court of Appeals found that the trial court improperly awarded survivors' benefits to plaintiff. The Court further found that the trial court clearly erred in awarding plaintiff attorney fees.

Plaintiff asks this Court to reinstate attorney fees. Defendant contends that even if plaintiff is ultimately found to be entitled to recover survivors' benefits, an award of attorney fees in the instant case is not authorized under § 3148 because this case presents both legitimate issues of statutory construction and bona fide factual questions. It is unclear whether or not the Court of Appeals considered the defendant's good-faith arguments. We therefore remand this case to the Court of Appeals for a more thorough disposition of defendant's substantive arguments regarding its good faith.

No costs, a public question being involved.

LEVIN, BRICKLEY, and CAVANAGH, JJ., concurred with ARCHER, J.

BOYLE, J. (*concurring in part and dissenting in part*). I agree with the majority that the Legislature did not intend to deny relief under the no-fault act to the dependents of a decedent solely because at the time of death the decedent was unemployed. I also agree that the Legislature did not intend that § 3107a should control the computation of survivors' benefits under § 3108 where the decedent was unemployed at the time of death.

Survivors' benefits under § 3108 are broader than the work-loss benefits under § 3107a. Survi-

vors' benefits include the value of tangible items other than, and in addition to, wages and salary, while work-loss benefits are limited to wage and salary income. Therefore, reliance on the language of § 3107a in the construction of § 3108 is inappropriate. *Miller v State Farm Mutual Ins Co,* 410 Mich 538, 564; 302 NW2d 537 (1981). Where the decedent is unemployed at the time of death, survivors' benefits are not limited to a computation under § 3107a.

I disagree, however, with the majority's conclusion that the plaintiff in this case established that the decedent would have been employed by the forestry service had he not suffered the accidental bodily injury causing death. As the majority of the Court of Appeals panel explained:

> The evidence presented at trial showed that on the date of Steven Gobler's death, he was not employed. It was only on September 6, six months after Gobler's death, when an "Inquiry of Availability" was received by his wife, that the possibility of employment occurred. This was not an offer of employment, and because of Gobler's death, he could not respond to indicate his interest in the potential positions which might be offered. [139 Mich App 768, 776; 362 NW2d 881 (1984).]

I would hold, therefore, that the "Inquiry of Availability" cannot support an award of survivors' benefits under § 3108 and would remand this case to the trial court for a determination of survivors' benefits based on past employment which may be calculated by a method analogous but not limited to that specified in § 3107a of the no-fault act.

I also disagree with the majority's treatment of the penalty interest and attorney fee issues. The Court of Appeals decision reversing the trial

court's award of survivors' benefits based on future employment and denying survivors' benefits because Steven Gobler was unemployed is evidence that the defendant may have been initially justified in denying plaintiff's claim. Therefore, I would vacate the award of interest and attorney fees and remand this question to the trial court for proceedings consistent with this opinion.

RILEY, C.J. (*separate opinion*). This appeal concerns the problem of calculating survivors' benefits under MCL 500.3108; MSA 24.13108 of the no-fault act in cases in which the survivor's decedent was unemployed at the time of his death. I would hold that in determining the amount of income from wages that the deceased would have received, for purposes of calculating benefits under § 3108,[1] a method similar to that applicable in calculating the amount of wage-loss benefits under MCL 500.3107; MSA 24.13107 may be employed. I would conclude, therefore, that survivors'-loss benefits may be calculated, in cases in which the deceased was temporarily unemployed, on the basis of an amount determined by reference to the deceased's past income, analogous to calculating wage loss under MCL 500.3107a; MSA 24.13107(1). I would also conclude that such benefits may be calculated on the basis of the amount of income from wages the deceased *would have* received after his temporary unemployment would have ended, similar to the conclusion of the Court of Appeals construing § 3107(b) in *Lewis v DAIIE,* 90 Mich App 251; 282 NW2d 794 (1979), but only when such future employment can be clearly established. In the event that the deceased was, and

[1] No evidence other than the decedent's past and potential future income from wages was submitted by plaintiff in support of her claim for survivors'-loss benefits. The extent of plaintiff's loss, therefore, is limited to the loss of support from the decedent's income from wages.

would have continued to be, a full-time student whose past and future income would have been derived only from part-time and seasonal employment, I would approve of the reasoning of the Court of Appeals in *Kennedy v Auto-Owners Ins Co,* 87 Mich App 93; 273 NW2d 599 (1978).

In the present case, I would affirm the Court of Appeals reversal of the trial court's calculation of survivors' benefits on the basis of the salary plaintiff's decedent would have received if he would have been employed by the United States Forestry Service. I agree with the Court of Appeals that the evidence presented was insufficient to support the factual finding that plaintiff's decedent would have been employed by the forestry service. I disagree, however, with the Court's holding that, because plaintiff's decedent was otherwise unemployed, plaintiff was not entitled to any benefits under § 3108. I would hold that survivors' benefits should be calculated by annualizing plaintiff's decedent's past income in the manner originally proposed by the trial court,[2] and, therefore, would remand this case to the trial court for the recalculation of benefits on the basis of that method. Finally, I would address the penalty interest and attorney fee issues which, because of the Court of Appeals disposition of this case, were not thoroughly addressed.

---

[2] Prior to trial, defendant successfully moved the trial court to limit the calculation of any award of survivors'-loss benefits to the method provided in § 3107a. Although the court expressly found that plaintiff's decedent would have secured employment with the United States Forestry Service, and that that employment would have begun approximately six months after his death, the court, consistent with its earlier ruling, held that benefits were to be calculated by annualizing the decedent's past income from his last employment pursuant to § 3107a. After some posttrial motion practice, however, the court amended its original opinion and held that benefits were to be calculated on the basis of the salary and fringe benefits the decedent would have received during his employment with the forestry service, after his temporary unemployment would have ended.

I

Survivors'-loss benefits consist of two elements. The first concerns the loss of "contributions of tangible things of economic value" that the deceased's dependents would have received for their support during their dependency, and the second concerns expenses incurred in obtaining certain services in lieu of those which the deceased would have performed. *Miller v State Farm Mutual Ins Co,* 410 Mich 538, 554; 302 NW2d 537 (1981). The issue in this case, as in *Miller,* concerns only the first element. Likewise, the issue in this case concerns only "contributions" that plaintiff would have received from her decedent's *income from wages.*[3]

While the loss of "contributions of tangible things of economic value" compensable under § 3108 differs substantially in theory and in scope from the loss of income compensable under § 3107, the calculation of benefits under each section is similar in some respects.[4] For purposes of calculating survivors'-loss benefits under this element of § 3108, for example, a survivor need not establish the amount of financial support she would have actually received from the deceased. Rather, once dependency is established, benefits are calculated on the basis of the gross income the deceased would have received, less an adjustment for payable income taxes, without the deduction of a personal consumption factor.[5] *Miller, supra.* Thus, in cases in which a dependent survivor claims

---

[3] The survivors' benefits award in the present case was based solely on the dependent plaintiff's loss of support from the decedent's income from wages.

[4] See *Belcher v Aetna Casualty & Surety Co,* 409 Mich 231; 293 NW2d 594 (1980).

[5] While the nature and language of § 3108 differs substantially from § 3107a, our construction of § 3108 in *Miller, supra,* renders the

benefits under § 3108 solely on the basis of the loss
of contributions she would have received from the
deceased's wage income, the calculation of benefits
is entirely dependent upon the amount of that
income. In such cases, "survivors' benefits paid for
loss of support may fairly be regarded as a partial
substitute for work-loss benefits which . . . would
have been paid to the injured person . . . ."
*Belcher v Aetna Casualty & Surety Co*, 409 Mich
231, 249; 293 NW2d 594 (1980).

II

In the present case, plaintiff claimed survivors'-
loss benefits which included loss of support from
the deceased's wage income. Defendant denied
plaintiff's claim because, among other things, her
deceased husband was a "full time student" at the
time of his death and, as such, was not "temporar-
ily unemployed" within the meaning of the no-
fault act. Initially, it was not defendant's position
that § 3107a was inapplicable; rather, defendant
viewed plaintiff's claim as derivative of the claim
her husband would have had for wage-loss benefits
and reasoned that, because he would not have
been entitled to such benefits under § 3107a, plain-
tiff was not entitled to survivors'-loss benefits un-
der § 3108.

Prior to the commencement of trial, the Court of
Appeals had released its decision in *Kennedy,
supra*, in which it expressly rejected defendant's
assertion that a full-time student could not qualify
as temporarily unemployed. At trial, defendant
contended, first, that plaintiff was not entitled to
survivors'-loss benefits because she had failed to

calculation of survivors' benefits based on a dependent's loss of
support from the decedent's income from wages virtually identical to
the calculation of wage loss.

establish any actual loss of financial support. De-
fendant reasoned that because plaintiff's income
was roughly commensurate in amount to the de-
ceased's, and that they both contributed relatively
equal amounts to their collective support, plaintiff
would not be able to establish any *actual* loss.
Second, defendant contended that if plaintiff were
entitled to survivors'-loss benefits, the amount
could only be calculated on the basis of the de-
ceased's past employment, as opposed to his poten-
tial future employment, because to do so on the
basis of the latter would be tantamount to calcu-
lating benefits on the basis of future earning ca-
pacity.

The trial court rejected defendant's first conten-
tion as contrary to this Court's decision in *Miller,
supra,* in which the personal consumption factor
issue was expressly decided. Finding that plaintiff
was a dependent of the deceased,[6] and that she had
sustained survivors' loss, the trial court ruled that
plaintiff was entitled to recover and that the only
remaining question concerned the proper method
of computation. In partial agreement with defen-
dant, the court ruled, initially, that benefits could
not be calculated on the basis of the deceased's
future potential income. Instead, the court ruled
that the proper method of computation would
require the annualization of the deceased's past
income pursuant to § 3107a. The court rejected
defendant's assertion that, pursuant to *Kennedy,
supra,* benefits should not be annualized on a full-
time basis, but should be limited to annualizing
the deceased's past income on a seasonal or part-
time basis. The court found that the deceased

---

[6] As noted by the Court of Appeals, plaintiff's dependency within
the meaning of the act was undisputed; she was conclusively pre-
sumed to be a dependent of the deceased pursuant to MCL
500.3110(1)(a); MSA 24.13110(1)(a).

would have secured full-time employment on the
basis of the deceased's past work history, that he
had completed his studies and in fact had received
his degree posthumously, that he had no immedi-
ate plans for returning to school, and that his
plans were to pursue his career. The court found,
furthermore, that plaintiff's decedent would have
been employed by the United States Forestry Ser-
vice as a full-time forester, beginning approxi-
mately six months after his death, even though
the court remained convinced that benefits could
not properly be calculated on the basis of the
salary the decedent would have received from that
employment. Thus, the court annualized the de-
ceased's past income from seasonal employment,
on the basis of an amount stipulated to by the
parties, which resulted in an annual income
amount of $9,755.06.

After ruling in defendant's favor on plaintiff's
bad faith and fraud counts, the court decided the
penalty interest and attorney fee issues. The court
awarded penalty interest, but limited that award
by ruling that penalty interest was to be computed
only on the deceased's unannualized actual past
income, and that such interest would have begun
to accrue only after the Court of Appeals decision
in *Kennedy.* The court ruled that penalty interest
would begin to accrue after January 1, 1979, and
would be computed only on the undisputed
amount of the deceased's income from his last
seasonal employment, because to that extent de-
fendant could not deny having received reasonable
proof of loss. The court also ruled that plaintiff
was entitled to recover attorney fees incurred after
January 1, 1979. The court reasoned that, because
defendant was also the defendant in *Kennedy,* and
the reason expressed for denying plaintiff's claim
in the present case was expressly rejected by the

*Kennedy* Court, that after the date of that decision defendant had unreasonably denied plaintiff's claim, at least with regard to calculating benefits on the basis of the undisputed amount of the deceased's actual past income.

After its initial ruling, but prior to the entry of judgment, plaintiff successfully moved the court to amend its original ruling with regard to the proper basis upon which to calculate survivors'-loss benefits. Relying upon *Lewis, supra,* and the court's express factual finding that plaintiff's decedent would have been employed by the United States Forestry Service, plaintiff argued that survivors'-loss benefits should be calculated on the basis of the salary and fringe benefits the deceased would have received from that future employment. The trial court amended its earlier ruling accordingly, and entered judgment for plaintiff, calculating survivors'-loss benefits on the basis of its earlier finding that plaintiff's decedent would have received a salary of $11,046 annually, plus $2,000 in fringe benefits for a total of $13,046.

III

I would affirm the Court of Appeals reversal of the trial court's calculation of survivors'-loss benefits on the basis of the salary and fringe benefits the deceased would have received if he would have been employed by the United States Forestry Service. The record in this case, which includes an inquiry of availability that was forwarded to the deceased sometime after his death, the testimony of a recruitment officer concerning forestry service employment policy and process, and the plaintiff's testimony regarding the deceased's career aspirations, does not establish that the deceased *would have* been employed by the forestry service. When

income from wages that the deceased would have received from future employment after his temporary employment would have ended can be clearly established, I would agree that survivors'-loss benefits should appropriately be calculated on the basis of that future income. In cases in which a contract of employment to begin at some future date was concluded—offered and accepted—prior to the fatal motor vehicle accident, for example, survivors'-loss benefits could properly be calculated on the basis of that future income amount. Circumstantial evidence tending to show that the deceased *could have* secured particular employment at some time within the three-year statutory period, however, would be insufficient. I agree with the Court of Appeals that the record in this case establishes only the latter.

In cases in which the deceased was temporarily unemployed at the time of his death, and in which his future employment cannot be established by some degree of clear and convincing evidence, survivors' loss from the deceased's wage income should be calculated on the basis of the deceased's past income analogous to calculating wage loss pursuant to § 3107a. In light of the underlying purposes and objectives of § 3108, and the no-fault act as a whole, it would not be reasonable to conclude that the Legislature's most probable intent was to completely deny the payment of any benefits to dependent survivors in such cases. While § 3108 does not specifically include a provision similar to § 3107a, it should be noted that it also does not include any specific reference to wages. Further, considering the broad language of § 3108, I do not find the omission surprising. Rather, I am persuaded that applying a method of calculation analogous to that which applies in

calculating wage loss in such cases would be consistent with the underlying purpose and public policy of the act as interpreted through the decisions of this Court. As stated in *Miller, supra,* 568:

> [Section] 3108 itself, and the act as a whole, presumably reflect a balance struck by the Legislature between absolute factual precision in the calculation of benefits and the goal of "assured, adequate, and prompt reparation for certain economic losses."

Inasmuch as the Legislature intended survivors'-loss benefits to be calculated as soon as possible after the fatal accident in any given case, allowing the application of a method analogous to § 3107a in cases in which the deceased was temporarily unemployed would surely further the objective of "minimiz[ing] administrative delays and factual disputes that would interfere with achievement of the goal of expeditious compensation of damages suffered in motor vehicle accidents." *Id.*

Therefore, I would reverse the decision of the Court of Appeals remanding this case for entry of no cause of action, and would remand this case to the trial court for the recalculation of benefits pursuant to the method provided in § 3107a, and consistent with the court's initial ruling as reflected in its opinion of December 8, 1981.

With regard to the attorney fee and penalty interest issues, I would conclude that the factual findings upon which the trial court's judgment was based were not clearly erroneous. I would emphasize that the issues addressed on appeal in the Court of Appeals and in this Court were not directly presented in the trial court, nor do they reflect the reasons expressed by defendant in sup-

port of its initial and continuing complete denial of plaintiff's claim.[7]

Accepting the trial court's premise that defendant was properly to be charged with having had knowledge of the Court of Appeals decision in *Kennedy, supra,* I am not convinced that the court's finding that defendant unreasonably continued to completely deny plaintiff's claim was clearly erroneous. Thus, I would reverse the decision of the Court of Appeals reversing the award of attorney fees. Likewise, I would conclude that the trial court's limited award of penalty interest pursuant to MCL 500.3142(2); MSA 24.13142(2) was not erroneous. Defendant had received reasonable proof of loss with respect to the limited overdue amount upon which penalty interest was awarded.

Thus, I would remand this case for a recalculation of survivors'-loss benefits, and in all other respects would reinstate the trial court's judgment.

GRIFFIN, J., took no part in the decision of this case.

---

[7] The record reflects that the reason for defendant's denial of plaintiff's claim was that plaintiff's decedent did not qualify as "temporarily unemployed" within the meaning of § 3107a. At trial, defendant argued that, if plaintiff were entitled to benefits under § 3108, the calculation of any award should be limited to the method provided in § 3107a. Defendant did not assert, prior to its appeal in the Court of Appeals, that plaintiff was not entitled to any recovery whatsoever because § 3107a is entirely inapplicable in calculating survivors'-loss benefits under § 3108.