COPUS v MEEMIC INSURANCE COMPANY

Docket No. 295499. Submitted February 9, 2011, at Detroit. Decided February 15, 2011, at 9:05 a.m.

Dorene Copus brought suit in the Kent Circuit Court against her no-fault insurer, MEEMIC Insurance Company, seeking work-loss benefits. Plaintiff was a teacher and, although she did not teach during the summer, she had an annual contract and had elected to be paid in 26 biweekly installments. After an automobile accident, she had been unable to work for the entire school year. Her adjusted monthly wage was less than the statutory maximum, and she argued in the trial court that this was the amount she was allowed. Defendant argued that her benefits should instead be calculated on the basis of the specific number of calendar days plaintiff would have worked each month; this would make her adjusted monthly benefit exceed the statutory cap for some months and be reduced to zero in summer months, decreasing her total benefits by the amount those months exceeded the cap. The court, Paul J. Sullivan, disagreed with defendant's method of calculating the benefits and awarded plaintiff the amount she sought. Defendant appealed.

The Court of Appeals *held*:

The work-loss benefits payable under the no-fault act are based on loss of income from work an injured person would have performed if he or she had not been injured. If a claimant missed work, the only determination to be made is the amount of income lost as a consequence of not performing that work. Pursuant to plaintiff's employment contract, the income plaintiff lost because she did not work was her full annual salary consisting of the 26 biweekly paychecks she did not receive due to her being injured.

Affirmed.

INSURANCE — NO-FAULT — WORK-LOSS BENEFITS — CALCULATION OF BENEFITS.

The work-loss benefits payable under the no-fault act are based on loss of income from work an injured person would have performed if he or she had not been injured; if a claimant has missed work,

the only determination to be made is the amount of income lost as a consequence of not performing that work (MCL 500.3107[1][b].

*William W. Decker, Jr., LLC* (by *William W. Decker, Jr.*), for plaintiff.

*Garan Lucow Miller, P.C.* (by *Daniel S. Saylor* and *Caryn A. Gordon*), for defendant.

Before: CAVANAGH, P.J., and STEPHENS and RONAYNE KRAUSE, JJ.

RONAYNE KRAUSE, J. Defendant appeals by right an order granting summary disposition pursuant to MCR 2.116(C)(10) in favor of plaintiff and denying it to defendant. This case involves computation of work-loss benefits under the no-fault act, MCL 500.3101 *et seq.* We affirm.

Plaintiff was injured in a serious automobile accident and sought wage-loss benefits from defendant, her insurer. Plaintiff's wage-loss benefit under the no-fault act is governed by MCL 500.3107(1)(b), which provides that personal protection insurance benefits are payable for

[w]ork loss consisting of loss of income from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured. Work loss does not include any loss after the date on which the injured person dies. Because the benefits received from personal protection insurance for loss of income are not taxable income, the benefits payable for such loss of income shall be reduced 15% unless the claimant presents to the insurer in support of his or her claim reasonable proof of a lower value of the income tax advantage in his or her case, in which case the lower value shall apply. Beginning March 30, 1973, the benefits payable

for work loss sustained in a single 30-day period and the income earned by an injured person for work during the same period together shall not exceed $1,000.00, which maximum shall apply pro rata to any lesser period of work loss. Beginning October 1, 1974, the maximum shall be adjusted annually to reflect changes in the cost of living under rules prescribed by the commissioner . . . . [Emphasis added.]

Both parties agree that the adjusted benefit is now $4,713.

Plaintiff is a special education teacher on a yearly contract with a yearly salary of $63,895. Plaintiff had the option of electing to be paid in 21 installments while school was in session or in 26 biweekly installments throughout the entire year, and she elected the latter.[1] She sought benefits for the 2008-2009 school year. Plaintiff and the trial court computed her wage-loss payments by dividing her yearly salary, less fifteen percent, by twelve months. She and the trial court therefore found she was entitled to $4,525.90 a month. Because this is below the maximum monthly amount payable, plaintiff was therefore entitled to a total of $54,310.75.

Defendant, however, argues that plaintiff's entitlement should be computed on the basis of the specific number of calendar days plaintiff's contract specified that she should work, notwithstanding the yearly nature of her contract and her election to be paid throughout the year. Defendant therefore would divide plaintiff's yearly salary by her 183 contract workdays and subtract taxes to arrive at $296.78 a day. It then multiplied her daily amount by the number of days

---

[1] We note that plaintiff did so not only for the school year at issue, but the previous year as well.

actually worked in each 30-day period, making allowances for scheduled days off. It arrived at monthly amounts ranging from $3,858.14 to $6,529.16, as well as two months in the summer with no payment at all. Because many months under defendant's computational framework would exceed the statutory cap, it would find plaintiff entitled to a total of only $44,268.64.

We review de novo dispositions of motions for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). We also review de novo questions of statutory interpretation. *People v Swafford*, 483 Mich 1, 7; 762 NW2d 902 (2009). The ultimate goal for the courts when analyzing a statute is to effectuate the intent of the Legislature. *Title Office, Inc v Van Buren Co Treasurer*, 469 Mich 516, 519; 676 NW2d 207 (2004). "The no-fault insurance act is remedial in nature and must be liberally construed in favor of persons intended to benefit" from its goal of guaranteeing motor vehicle accident victims compensation for certain economic losses. *Gobler v Auto-Owners Ins Co*, 428 Mich 51, 61; 404 NW2d 199 (1987).

There is nothing ambiguous about MCL 500.3107(1)(b). As defendant correctly points out, statutes must be read as a whole. The first sentence of MCL 500.3107(1)(b) may not be phrased as artfully as possible, but it is clearly a definition provision: "work loss" is *defined* as "loss of income from work an injured person would have performed . . . if he or she had not been injured." The statute provides an upper limit on the amount of monthly compensation for work loss. However, the statute does not mandate any sort of temporal correlation between the work and the income, as defendant asserts. The calculation might be simplest if a claimant is paid a straightforward, fixed dollar

amount per day, but the fact that a salaried employee's income is not so linearly tied to the strict number of hours worked is not an impediment to proper calculation. Obviously, if a claimant does not actually miss any work, the claimant cannot claim any loss of income under the statute as a consequence. But if a claimant has missed work—as plaintiff has here—it remains only to determine the income lost as a consequence of not performing that work.

Put another way, MCL 500.3107(1)(b) does *not* say *when* "work loss" must be deemed to occur. This is reasonable. In a straightforward, hourly employment context, many employers delay paychecks by some number of pay periods, so missing a day of work may not be reflected in a claimant's paycheck for some time. The income lost because the claimant did not work is therefore a reduction in pay several weeks—or more— later. In the instant case, pursuant to plaintiff's contract, the income plaintiff lost because she did not work was 26 biweekly paychecks, totaling $63,895, that she did not receive for an entire year. Defendant seeks to create a fiction, completely unwarranted by anything in the statute, that plaintiff's lost income was something other than what it actually was.

Defendant's position is not even substantively consistent with the Attorney General opinion upon which it relies,[2] at least when that opinion is read as a whole instead of as an isolated excerpt. Defendant correctly observes that the statute is intended to compensate an injured person for actual loss of income, not a loss of

---

[2] Attorney General opinions are not binding on the courts and are not even of certain effect on any governmental agencies. *Danse Corp v Madison Hts*, 466 Mich 175, 182 n 6; 644 NW2d 721 (2002). We do not purport to endorse or criticize OAG, 1979-1980, No 5673, p 684 (April 1, 1980), now, but rather discuss it solely because it was discussed by the parties.

earning capacity. See *Ouellette v Kenealy*, 141 Mich App 562, 564-565; 367 NW2d 353 (1984). In OAG, 1979-1980, No 5673, p 684 (April 1, 1980), the Attorney General opined that when a teacher is injured and unable to work during the summer, he or she is not entitled to payment of no-fault benefits. This is an obvious conclusion: unless the teacher teaches summer school or otherwise performs work over the summer, the teacher cannot have lost income from work that he or she would have performed.

Defendant, however, seeks to extrapolate too much from this opinion. The opinion correctly notes in passing that the teacher's loss "would be on the basis of the actual loss for the time during which the teacher is unable to work as a teacher." *Id*. at 687. In contrast to the situation under discussion in the Attorney General opinion, plaintiff here *had* actual work loss. And as a direct result of that actual work loss, she lost 26 paychecks' worth of income over a year. Defendant's attempt to rewrite what plaintiff's income would have been is at odds with reality and with MCL 500.3107(1)(b), which seeks to compensate her for *income* lost *as a consequence of* work lost.

The trial court correctly interpreted MCL 500.3107(1)(b) and correctly applied it to the facts of this case.

Affirmed. Plaintiff, being the prevailing party, may tax costs.